MARY C. J. TODD, Plaintiff, Appellant, v. JOHN H.
TERRY, EXECUTOR, Defendant, Appellant.

St. Louis Court of Appeals, June 1, 1887.

1. ADMINISTRATION—WIFE'S SEPARATE ESTATE—CLAIM AGAINST HUS-
BAND'S ESTATE.—A wife, who has a separate personal estate in her
husband's hands, may, after his death, prove her claim, and have
it allowed against his estate, in the probate court.

2. ———— EVIDENCE—BOOKS OF ACCOUNT.—Books of account of the
deceased, when offered by a claimant, are evidence, both as to the
debit and credit items; such account being evidence in its en-
tirety.

3. ———— COMPROMISE.—A compromise entered into by an executor,
upon a sufficient consideration, is conclusive against him as to all
facts embraced within the compromise.

4. ———— PRACTICE—ON APPEAL FROM PROBATE COURT.—The find-
ings of fact of a trial court, on the hearing of a claim against a

decedent's estate, on appeal from the probate court, are conclusive, when supported by substantial evidence.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

M. L. GRAY and H. J. GROVER, for the plaintiff, appellant: The compromise is conclusive, as to all questions therein embraced. *Reilly v. Chouquette*, 13 Mo. 226. No investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties entering into the compromise thought, at the time, that there was a question between them. *Clark v. Gammell*, 125 Mass. 428; *Flanagan v. Kilcome*, 58 N. H. 443; *Reilly v. Chouquette*, 18 Mo. 226; *Rinehart v. Bills*, 82 Mo. 538. The account rendered by Mr. Todd, to his wife, shows, on its face, that the money in his hands was inherited by her from her father's estate, and was, under the law, her separate property, and he could not reduce it to his possession without her assent in writing. Rev. Stat., sect. 3296; Session Acts, 1883, p. 113.

BROADHEAD & HAEUSSLER, for the defendant, appellant: A widow, under the facts in this case, and irrespective of payments made to and for her, can not assert a demand against her deceased husband's estate. *Woodward v. Spear*, 141 Mass. 283.

THOMPSON, J., delivered the opinion of the court.

Mrs. Todd presented, for allowance, in the St. Louis probate court, a demand against the estate of her deceased husband, Albert Todd, for the sum of $1,268.93, claiming the same as a balance due her, by account, of moneys received by Mr. Todd, which she had inherited from her father's estate. The evidence submitted, in support of the claim, consisted of a paper containing an account, in the handwriting of Mr. Todd, in which he

had charged himself, in her favor, with various moneys received by him on account of her interest in her father's homestead, and had credited himself with a number of items, in amounts from one hundred dollars down to $1.25. The account was headed, "Mr. Albert Todd, in account current with Mrs. Mary C. Todd, his wife." It placed on the debit side the sums of money which purported to have been paid to, or for, Mrs. Todd, and then followed, on the credit side, the sums which he had received on account of her interest in her father's homestead. This account, if footed up and a balance struck, showed that Mr. Todd was indebted to Mrs. Todd, in the amount for which she preferred her demand. It showed that the sums of money which Mr. Todd had received had been received from March 23, 1879, to March 24, 1880, inclusive, and that the sums which he had paid to, or for, Mrs. Todd had been paid between April 23, 1879, and April 18, 1883, inclusive. The account had not been closed by striking a balance. Mrs. Todd also put in evidence a small book of accounts, kept by Mr. Todd, in his lifetime, in his own handwriting. This book contained on opposite pages (pages 51 and 52), the same account, but with certain additional charges against Mrs. Todd. On its debit side, where the charges against Mrs. Todd were entered, after the entry of the last charge in the account which Mrs. Todd had offered in evidence, there was this memorandum: "1883, April 27. Delivered to her this account for examination. Albert Todd." Then followed four additional charges against Mrs. Todd, as follows:

"Sept. 1 [meaning Sept. 1, 1883], paid J. W. Reed for Mrs. Dietrich's portrait .................................... $50.00

"Dec. 20, cash to wife for Belle ......... 10.00

"Dec. 20, to paid her $\frac{1}{4}$ share of expenses and costs for enclosing her father's burial ground, in Pocohontas, Ill... 71.50

"1884, Jan. 15, cash for Belle ........... 40.00"

The aggregate of these additional charges against Mrs. Todd was $171.50. The probate court deducted this sum of $171.50 from the sum of $1,268.93, the amount claimed by Mrs. Todd, as shown by the former account, and, after computing interest, allowed her demand to the extent of $1,097.43, and ordered it to be placed in the fifth class.

From this order the executor of the estate appealed to the circuit court. In the circuit court the cause was tried anew, by the judge, the parties waiving a jury. Instructions were given and refused, and the court drew up a memorandum, stating briefly its conclusions of law and fact, which memorandum is embodied in the record.

The validity of the claim set up by Mrs. Todd was not contested in the circuit court, upon any theory of fact. In other words, it was not denied that Mr. Todd had, at the date stated in the account put in evidence by Mrs. Todd, in support of her claim, received the moneys there stated from the purchaser of the homestead of her father in Illinois. The validity of her claim was, however, questioned upon a supposed principle of law, the executor taking the position that a wife can not, in this state, prefer a claim against the estate of her deceased husband. This position is so clearly untenable, in the state of our law, that it seems almost idle to argue the question. That a wife may sustain the relation of creditor to her husband has been repeatedly ruled in this state. She may maintain a suit against her husband where she seeks relief in respect of her separate property ( *Walter v. Walter*, 48 Mo. 140 ); and, for reasons equally strong, her husband being dead, she may maintain such an action against his executor; and such is the nature of the present action.

The propriety of allowing the estate of Mr. Todd the additional credit of $171.50, being the amount of the four additional items on his day book above given, was contested by Mrs. Todd, on the ground that the day

book was a separate account, and that these items were, therefore, not competent evidence in behalf of the estate against her. The general rule undoubtedly is, that the books of account of a deceased person are not, of themselves, evidence in his favor. *Hensgen v. Mullally*, 23 Mo. App. 613. But both the probate court and the circuit court must have taken the view that the rule was here without application, because the account upon which Mrs. Todd founded her claim had not been balanced and closed, either on the account given to her by Mr. Todd, or on the book; because the four additional charges against her in the book seem to have been a continuation of the same account; and because she herself put the book in evidence. We are not prepared to say that this conclusion was erroneous. Mrs. Todd having put this book in evidence in support of her claim, it seems to have been proper to allow it to speak in evidence for the estate, as well as against it.

It may be stated here, that about one-third of the page of this book which contained the charges against Mrs. Todd, had been cut out. No explanation of this could be given by the executor, in whose possession the book had been since Mr. Todd's death, except that this book was similarly mutilated in other places, and so were other of Mr. Todd's account books. No imputation is made against the executor on this account; and, at most, the circumstances called for deductions of fact with which we have nothing to do.

This reasoning leads us to the conclusion that Mrs. Todd was, *prima facie*, entitled to recover the amount for which her claim was allowed by the probate court, unless the trial court was right in taking the view that her claim had been extinguished, in part, by certain matters which were set up by the executor in the nature of a counter-claim. This counter-claim was supported by evidence tending to show the following state of facts: That, in the spring of 1884, Mr. Todd purchased an expensive mansion on Lafayette avenue, in the city of St.

Louis, and that, in this and in the following month, Mrs. Todd purchased of various dealers in St. Louis, for the furnishing of this residence, considerable quantities of furniture, carpets, rugs, curtains, and such like goods; that some of these purchases were charged to her, and some of them to Mr. Todd; that no special directions were given as to how the bills should be charged, but that the various dealers, or their book-keepers, made out the bills in the name of the husband or the wife, according to their notion of the person who was the purchaser; that most of them were made out against the wife, for the reason, as explained by various witnesses, that she made the purchases in person. It also appeared that some of these bills were paid for in cash, some by Mr. Todd's checks drawn in favor of the dealer, and some by checks drawn in blank by Mr. Todd in favor of Mrs. Todd, and filled out at the counting rooms of the various dealers under the direction of Mrs. Todd, and endorsed by her with her name, and by her delivered in payment, as the amounts to be paid, after making corrections, were ascertained. Mr. Todd died in April, 1885, and after his death, the evidence tends to show that Mrs. Todd claimed all, or most, of the furniture in the family mansion as hers, founding her claim upon three heads: (1) The amount allowed her out of her husband's personal effects as exempt from administration, under the provisions of sections 105 and 107, of the Revised Statutes. (2) Articles which had become hers by reason of her having acquired them as *gifts* from her husband during his lifetime; and (3) articles *purchased* with her own money during his lifetime. The evidence at the trial was not clear, certainly not conclusive, as to what, or how much, of these she claimed as purchases, and what, or how much, as gifts. A controversy arose between her and the executor, touching the validity of this claim. Meanwhile the probate court, upon her application, had made an allowance in her favor of the sum of two thousand dollars under the stat-

ute, in lieu of provisions, etc., which allowance was deemed by the executor excessive. To settle the controversy respecting the furniture and effects in the house, Mrs. Todd and Mr. and Mrs. Terry, on the nineteenth of August, 1885, entered into the following compromise agreement:

"This agreement, made and entered into this nineteenth day of August, 1885, by and between Mary Caroline J. Todd, widow of the late Albert Todd, deceased, and John H. Terry and Elizabeth Terry, devisees under the last will of said Albert Todd, deceased, witnesseth: That the said Mary Caroline J. Todd agrees and covenants to accept the sum of seventeen hundred and fifty dollars, in full payment of the allowance granted her by the probate court of the city of St. Louis, in lieu of provisions, of the sum of two thousand dollars.

"In consideration of the foregoing, the said John H. and Elizabeth Terry agree and covenant to consent to the retention, by said Mary Caroline J. Todd, of all personal property at the late home of Albert Todd, deceased, claimed by said Mrs. Todd as her own, as per receipt of this date, including all such property as may not have been, heretofore, inventoried and appraised, and is not set out (being a cow, bedding, pistol, and shot-gun) in said receipt, and the said John H. [Terry] and Elizabeth warrant and defend the title to said personal property, so claimed by said Mrs. Todd as her own, unto the said Mary Caroline J. Todd and her heirs and assigns, against any and all claims and demands that may be made to, or against, said property, by the estate of the late Albert Todd, deceased, or any of its devisees.

"In witness whereof, the said parties have hereunto set their hands and seals, at St. Louis city, this nineteenth day of August, A. D. 1885.

"[SEAL]    MARY CAROLINE J. TODD.
"[SEAL]    ELIZABETH TODD TERRY.
"[SEAL]    JOHN H. TERRY."

It is perceived that this agreement does not, upon its face, purport to be made by Mr. Terry, as executor of Mr. Todd's estate, but is made by Mr. and Mrs. Terry, in their character of devisees under the will, they warranting Mrs. Todd's title to the property conceded to her. Although Mr. Terry was not, in his character of executor, a formal party to this instrument of writing, he, nevertheless, in this character, proceeded to carry out its terms, and, so far as anything was required to be done by him in such character, he fully executed it. This he did: (1) By taking Mrs. Todd's receipt, of even date with the instrument of compromise, for certain described furniture, of the appraised value of seven hundred and seventy-six dollars, the receipt running, "which I claim as my own, in part being gifts, and the remainder having been bought by myself, and with my own funds, as shown by the bills thereof in my possession." (2) By taking Mrs. Todd's receipt, likewise of even date with the instrument of compromise, for the remaining personal property (with certain deductions), of the total appraised value of $252.50, as her allowance under sections 105 and 107, of the Revised Statutes. (3) By taking Mrs. Todd's receipt, of like date, for certain other described books, of the appraised value of one hundred and ten dollars, claimed by her under section 105, of the Revised Statutes. (4) And, finally, on February 8, 1886, by taking her receipt for the sum of seventeen hundred and fifty dollars, which receipt contained this recital: "In full payment and settlement of the allowance of two thousand dollars, made to me in lieu of provisions by the St. Louis probate court, the reduction of two hundred and fifty dollars being made in allowance, in accordance with an arrangement made between the legatees of said Albert Todd and myself."

Complaint is made, on behalf of Mrs. Todd, of the rulings of the court in refusing the following instruction:

"The court declares that the account sued on establishes an indebtedness on the part of Albert Todd, deceased, to his wife, the plaintiff, in the sum of $1,268.93, and that the burden of proof is upon the defendant to show that said indebtedness has been paid and discharged, and unless it is proved to the satisfaction of the court, sitting as a jury, that said indebtedness has been paid and discharged, their verdict must be for the plaintiff."

The court endorsed upon this instruction, as a reason for refusing it, the words "account is unfinished." This is not deemed a good reason for refusing the instruction, as the instruction embodied the correct statement of law applicable to the facts in evidence, and did not call for any opinion of the court upon a question of fact. The account, though unfinished, made out a *prima facie* case in favor of the plaintiff, but the conclusion finally reached by the court shows that the court proceeded in making its finding upon the principle embodied in this instruction. It did give effect to the account in favor of the plaintiff, and then abated her recovery by the appraised value of certain pieces of furniture, which the court found to have been purchased by Mrs. Todd, with her own money, in the hands of her husband. The refusal of the instruction, therefore, wrought no prejudice to Mrs. Todd.

Another instruction, tendered by Mrs. Todd, and refused, was as follows:

"As to the items charged against Mrs. Todd in Mr. Todd's book, after the rendition of the account sued on, they can not be adjudged against her, unless they were so charged by the written consent of Mrs. Todd, if the court believes, from the evidence, that the money in Mr. Todd's hands was her separate estate."

The court refused this instruction on the ground that the book had been offered in evidence by the plaintiff, and was, therefore, evidence against her. We are not prepared to say that the court erred in this instruction.

Another instruction, tendered by Mrs. Todd, and refused, was as follows:

"If the court, sitting as a jury, find from the evidence that, in the controversy with the executor and heirs of said estate, about the allowance of two thousand dollars to Mrs. Todd, in the probate court, and about her claim to the furniture, she stated to said executor that the furniture was hers, by gift from her husband, in part, and in part purchased with her own money, and that that was all of her statement on that subject, before it can find that, by such statement, unaided by other evidence, she meant and intended to say that the special fund represented by the account sued on was so used in purchasing said furniture, it must be proved, to their satisfaction, that Mrs. Todd had no other funds or money in her own hands, or her husband's hands, to which such declaration might apply."

The court endorsed upon this instruction the following reason for refusing it: "The rule is the other way. A party making a declaration against interest, which is equivocal, can not complain if it is taken against him strictly." This was a good reason; but, outside of this, it may be observed that this instruction is not framed upon any proper conception of the office of instructions. In law cases, tried by the judge without a jury, instructions are framed upon precisely the same theory as in cases tried by a jury. They call for conclusions of law upon hypothetical facts. It is a misconception of their proper office to frame them so as to make them call for conclusions of fact. This instruction calls for such conclusions or deductions, and, therefore, if the case had been tried by a jury, the giving of it would have been error. It was entirely within the province of the court, discharging the functions of a jury, to say what deductions were to be drawn from the statements made by Mrs. Todd, concerning the manner in which she derived the title to the furniture which she claimed.

Mrs. Todd, also, requested, and the court refused, this instruction :

" If the court, sitting as a jury, believes, from the evidence, that there was a controversy between the plaintiff and the defendant, as to the allowance of two thousand dollars, made to the plaintiff, in the probate court, in lieu of provisions, and as to her rights in, and ownership of, the furniture in question, and that, as a compromise of said controversy, the plaintiff, and the defendant, Terry, and his wife, made the agreement of August 19, 1885, and the plaintiff thereby, in consideration of her remitting two hundred and fifty dollars of said allowance of two thousand dollars, was allowed to retain said furniture as her own, as shown by said agreement, and the receipt read in evidence, then the estate of Albert Todd and its devisees are bound by that agreement and are estopped thereby, and the plaintiff is entitled to recover the balance of the account sued on."

We are of opinion that this instruction was properly refused. The compromise agreement, assuming it to be an estoppel on the executor, settled nothing beyond the matters which were in controversy. It merely settled that Mrs. Todd was to retain the furniture and that the estate should retain two hundred and fifty dollars of the allowance which the probate court had made to Mrs. Todd in lieu of provisions. It did not touch, one way or the other, the controversy whether Mrs. Todd absorbed all the money of her own, in her husband's hands, in the purchase of this furniture, though it did involve the concession, on the part of the executor, as shown by Mrs. Todd's receipt, above set out, that a large portion of the furniture had been so purchased. The contention, that this compromise must have the effect of deciding the question that Mrs. Todd is entitled to sustain this claim against the estate of her deceased husband, would be to convert it from a compromise into a mere sale. If Mr. Terry had claimed the furniture as belonging to the estate, and Mrs. Todd, acceding to this claim, had pur-

chased it of the estate for two hundred and fifty dollars, then the view might, perhaps, be sustained that, after selling the furniture to her, the executor should not be allowed to set up that it had been bought with her own money, and, therefore, make her pay for it again. So far from sustaining the contention that this compromise agreement is an estoppel against the creditor, preventing him from setting up the defence which he sets up, if we could draw any conclusions of fact from the evidence, we should be prepared to say that, at the time when this compromise agreement was made, it was not within the understanding of the parties that it should have the effect here claimed, but that it was the purpose of Mrs. Todd to claim all, or most, of the furniture, on the ground that it had been purchased with her own money, and having succeeded measurably in this claim, her attempt to prove up against the estate the present account, without any abatement, is an after thought, and an entire change of position on her part. We do not question the argument that is pressed upon us in behalf of the conclusiveness of compromise agreements, and especially of family settlements. We also incline to hold that, after executing this agreement, the executor is estopped from repudiating it, that is, from claiming anything which he has, by its terms, conceded to Mrs. Todd. But we take the view that the above instruction called for an unwarranted *interpretation* of the agreement, and was, therefore, properly refused.

The entire argument which has been made on behalf of the executor, involves a contention that, upon the undisputed evidence, the entire account, upon which Mrs. Todd bases her claim, had been absorbed in the purchase of the furniture, for which reason she was not entitled to recover anything. A supplemental argument on behalf of Mrs. Todd, asks us to take the view that, upon the conclusive facts shown by the record, Mrs. Todd was entitled to have her demand allowed against

the estate to the full extent claimed by her. Upon these respective contentions, we will say that the record has been carefully examined, and that we are not prepared to say that the conclusions of fact, at which the learned judge, sitting as a jury, arrived, are either unsupported by substantial evidence, or contrary to the conclusive deduction of fact required by the evidence in the case. We must here again remind the parties, as we are generally obliged to do in cases of this kind, that this is not a case in which we have power to deal with the facts as chancellors. In this state, actions for the recovery of money only are triable by a jury. Rev. Stat., sect. 3600. This, although originating in the probate court, and heard without formal pleadings, is in the nature of such an action. The circuit court and the parties on both sides, therefore, properly treated it as analogous to an action at law. Both the parties requested instructions, and instructions are only properly requested in cases at law. The circuit court, accordingly, in dealing with the facts, performed the office of a jury, merely. We can not superintend the court in the discharge of this function, unless we are able to see that he has proceeded to his conclusions of fact without a basis of substantial evidence, or that he has found against the entire concurrence of evidence in the case, which evidence is delivered by credible witnesses, and not subject to any circumstance of suspicion. We can not do this in the present case. We are prepared to make the observation that Mrs. Todd ought to feel well satisfied with what the learned judge gave her, and if the estate suffered by reason of her having received this much, it was because of the failure of the executor to produce satisfactory evidence establishing, in its full details, the affirmative defence which he set up.

With the concurrence of Judge Rombauer, the judgment will be affirmed, the costs of the appeal to be borne equally by the parties. It is so ordered. Judge Lewis is absent.