McGuire v. Allen.

McGuire, *Administrator*, v. Allen, *Appellant*.

IN BANC.

1. **Married Woman's Act**: HUSBAND'S REDUCTION TO POSSESSION OF WIFE'S PERSONALTY. Under Revised Statutes, 1879, section 3296, the husband can reduce his wife's personalty to possession only by procuring her written assent thereto.

2. ———: ———: BLANK INDORSEMENT OF CHECKS. The mere blank indorsement by the wife of a check for money due her and delivery of the check to her husband does not constitute a sufficient written assent within the meaning of the statute.

3. ———: WIFE'S PAROL GIFT. A husband cannot acquire his wife's separate statutory personalty by her parol gift.

4. ———: SALE BY WIFE TO HUSBAND. Whether the wife may, for a valuable consideration, sell and transfer such estate to her husband in the manner she can to a third person, not decided.

5. The Contract created by a blank indorsement is an implied one, and may be explained by parol.

| | |
|---|---|
| 108 | 403 |
| 56a | 509 |
| 108 | 403 |
| 66a | 328 |
| 108 | 403 |
| 70a | 336 |
| 108 | 403 |
| 143 | 651 |
| 108 | 403 |
| 151 | 66 |
| f151 | 426 |
| 108 | 403 |
| 81a | 14 |
| 81a | 15 |
| 108 | 403 |
| 157 | 421 |
| 108 | 403 |
| 169 | ²220 |

*Appeal from Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

AFFIRMED.

*J. C. Wallace* and *Wash. Adams* for appellant.

(1) By the common law husband and wife are one person, and that person is the husband. A married woman under that law cannot legally make, indorse or accept notes or bills, as acting for herself. 1 Pars. on

Notes & Bills [2 Ed.] p. 78. (2) The common law has been modified by statute in this state so that with reference to her property, real and personal, a female,. married or single, is now on full equality with a male, except in a few particulars defined by statute ; save in this respect the difference in sex is utterly immaterial. *Blair v. Railroad*, 89 Mo. 383 ; *Brown v. Bowen*, 90 Mo. 190 ; *Morrison v. Thistle*, 97 Mo. 601.. (3) Even if the court should hold that the wife cannot transfer to her husband any of her statutory separate estate except by writing, yet the case below was wrongly decided because the blank indorsement by the wife of the check in controversy was a sufficient writing under the statute. *First.* A bank check is the appropriation of the amount of money therein named to the holder. *Chouteau v. Rouse*, 56 Mo. 65 ; *Priest v. Way,* 87 Mo. 30, 31. *Second.* The indorsement in blank by Mrs. Allen and delivery to her husband vested title in him. ''A blank indorsement constitutes by itself a complete and perfect transfer of the interest in the bill,. and without the addition of any other words will vest the right of action and all other rights in the transferee and subsequent holders, though, if the transferee were a mere agent, his principal may interfere.'' Chitty on Bills, 229, 230 ; *Moore v. Pendleton*, 16 Ind. 481 ;. *Palmer v. Bank*, 78 Ill. 380 ; *B. Co. v. Bailey*, 18 La.. Ann. 676 ; *Ex parte Two Good*, 19 Vesey, 229 ; *Odell v. Presbury*, 13 Mo. 330. (4) ''Those things which the law implies respecting a blank indorsement, viz. : That the title to the instrument and its contents are transferred, and that the transferee assumes the obligation of an indorser, are as much part of the indorsement as though written in express terms. What is implied in an express contract is as much a part of it as what is: expressed.'' Bishop on Con. [Enlarged Ed.] secs.. 241-255. ''Undoubtedly necessary implication is as much a part of an instrument as if that which was so implied was plainly expressed.'' *Hudson Co. v. Coal*

*Co.*, 8 Wall. 276. ( 5 ) Parol evidence of the declarations of Mrs. Allen was admissible for the following reasons : *First.* Because they were declarations against interest. *Second.* They tended to show she indorsed and delivered the check to her husband. *Third.* They tended to show, if this were at all material, that the gift was her voluntary act, and not the result of undue influence. *Smith v. Wilton*, 69 Mo. 458 ; *Wynn v. Cory*, 48 Mo. 346 ; *Dickerson v. Chrisman*, 28 Mo. 134 ; *Robb v. Schmidt*, 35 Mo. 290 ; *Anderson v. McPike*, 86 Mo. 293 ; *Cavin v. Smith*, 24 Mo. 221.

*W. J. Ward*, also, for appellant.

( 1 ) A blank indorsement of a check or note vests in the holder a *prima facie* title of ownership to sell it and dispose of it as he pleases. *Odell v. Presbury*, 13 Mo. 331 ; *Bank v. Bank*, 71 Mo. 183 ; *Sterling v. Bender*, 7 Ark. 201 ; *Wilkinson v. Nicklin*, 2 Dall. 396 ; *McDonald v. Bailey*, 14 Me. 101. ( 2 ) The usual way that negotiable paper is transferred is by writing the payee's name in blank upon it. 1 Daniels on Negotiable Ins. [ 3 Ed. ] sec. 688*b*.

*John N. Southern* and *Gates & Wallace* for respondent.

( 1 ) Under Revised Statutes, 1879, section 3296, in order to convey the title from the wife to the husband she must : *First.* Give her assent. *Second.* The assent must be express ( not implied ). *Third.* The terms of the assent must be set out. *Fourth.* The assent must be in writing. *Fifth.* The assent must give full authority to the husband to sell, incumber or otherwise dispose of the same for his own use and benefit. ( 2 ) It was the obvious intent of our legislature to restrict within the narrowest limits the power of the husband over the wife's personalty, and he cannot sell, incumber

or otherwise dispose of the same for his own use and
benefit, except by the express assent of his wife in
writing, setting forth the terms and the full authority
to so dispose of it.    Nothing can be implied ; nothing
which is omitted can be supplied by parol.    *Boughton
v. Brand*, 94 Mo. 169 ; *Rodgers v. Bank*, 69 Mo. 560 ;
*McCoy v. Hyatt*, 80 Mo. 130 ; *Gilliland v. Gilliland*, 96
Mo. 522 ; *Blair v. Railroad*, 89 Mo. 383.    ( 3 )    Where
a statute designed to protect the wife points out any
particular mode of transferring her property, that mode
must be followed.    *Gilliland v. Gilliland*, 96 Mo. 522 ;
*Parker v. Wimberly*, 78 Ala. 64 ; *Beene's Heirs v.
Randall's Heirs*, 23 Ala. 514 ; *Montgomery v. Scott*, 61
Miss. 409 ; *Jones v. Fisk*, 9 S. & M. ( 17 Miss.) 144 ;
*Simms v. Ray*, 96 N. C. 87 ; *Wingo v. Parker*, 19 S. C.
9 ; *Briggs v. Titus*, 7 R. I. 441 ; *Nissley v. Heisey*, 78
Pa. St. 418 ; *Huffman v. Huffman*, 118 Pa. St. 58.    ( 4 )
An indorsement in blank by a person *sui juris* is at once
a transfer and a contract ; it is an irrevocable authority in
anyone to fill up the blank, and makes the paper pay-
able to barrier and negotiable by delivery.    Benj. Chal-
mers, Bills and Notes, p. 126 ; Randolph, Com. Paper,
sec. 16 ; *Hunter v. Hempstead*, 1 Mo. 67.    At common
law a married woman could not validly indorse a note
or check unless her husband consented, when it became
his act.    *Evans v. Secrist*, 3 Ind. 545 ; *Bank v. Joy*, 41
Me. 568 ; *Stevens v. Beals*, 10 Cush. 291 ; *Mudge v.
Bullock*, 83 Ill. 22 ; *Menkins v. Heringhi*, 17 Mo. 297 ;
*McLean v. Weidmeyer*, 25 Mo. 364.    And the wife is
not bound by the contracting part of the indorsement
in the absence of enabling statutes, as anyone not labor-
ing under a disability would be.    *Moreau v. Bronson*,
37 Ind. 195 ; *Flanders v. Abbey*, 6 Biss. 16 ; *Phillips v.
Wicks*, 45 How. Pr. 477.    ( 5 )    The indorsement to the
defendant of the check was not such a writing as gave
him full authority to sell, incumber or otherwise dis-
pose of it for his own use and benefit.    It was an equiv-
ocal act consistent with several other interpretations,

and did not constitute such an unequivocal assent in writing as the law requires. *Franc v. Nirdlinger*, 41 Oh. St. 298 ; *Farmer's Ex'r. v. Farmer*, 39 N. J. Eq. 211 ; *Harmon v. Renfrew*, 84 Mo. 332 ; *Clark v. Clark*, 86 Mo. 114 ; *Pike v. Baker*, 53 Ill. 163 ; *Drury v. Briscow*, 42 Md. 154.

THOMAS, J.—BLACK, J., delivered the opinion on behalf of the majority of the judges of division number 1 in this case, as follows :

"William McGuire, as the administrator of the estate of Mrs. Susan Allen, brought this action against William Allen, the husband of the deceased, to recover the proceeds of a check.

"The facts are these : Mrs. Allen was a daughter of Robert Daniels who died in 1883, and his heirs constituted Mr. Anderson a trustee to settle the estate. On August 28, 1883, the trustee paid Mrs. Allen $4,556 on account of her distributive share of her father's estate by a check payable to her order. The trustee handed this check to her husband, the defendant, and he took it home and gave it to her. She signed her name on the back of the check and then 'gave it back to him. He deposited the same in his own name and used the proceeds. She died in 1886.

"The evidence shows that Mrs. Allen, at the time she handed the check to her husband told him to deposit it in his own name so McGuire and the Parker heirs could not get the money. McGuire, who is the administrator suing, was her son by a former marriage, and the Parker heirs were children of her deceased daughter by such former marriage. There is much other evidence to the effect that Mrs. Allen stated on several occasions that she had given the check or money to the defendant, that he had been a good husband to her, that the money belonged to him, and he could do with it as he pleased, that McGuire had not treated her right, and she did not want him to have any of it. Some of

these statements were made at a time when the defendant was using part of the money in building a house upon his own land, as we understand the evidence.

"Section 3296, Revised Statutes, 1879, first declares that any personal property including rights in action, which may have come to a married woman during the coverture by bequest, gift, inheritance, etc., shall be and remain her separate property under her sole control, etc., and then provides: 'This section shall not affect the title of any husband to any personal property reduced to his possession, with the express assent of his wife; provided that such personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless, by the terms of said assent in writing, full authority shall have been given by the wife to the husband to sell, incumber or otherwise dispose of the same for his own use and benefit.'

"1.   This section of the statute, as has been often said, produced a radical change in the law in respect of the right of the husband to his wife's personal property. It secured to her her personal property and choses in action free from any claim of the husband, and free from process of law for his debts, except for his debts created for necessaries for the wife and family. As to all her personal property and choses in action she is in effect a *feme sole,* and the common-law right of the husband to reduce her property to his possession is restricted to the method pointed out in the statute. As said by this court in the case of *Rodgers v. Bank,* 69 Mo. 560, 'to put an end to all investigations, the law plainly requires the assent of the wife to be in writing;' and when speaking of this legislation it is again said in that case: 'It is the obvious intent of our recent legislation to restrict within the narrowest limits the power of a husband over his wife's personalty. Such legislation may lead to hardships, as it does apparently in the

McGuire v. Allen.

present case ; but the judiciary have no concern with the policy or impolicy of legislative enactments.   The legislature have required the written assent of the wife to the husband's reductions of her personal property to his possession.'   Following this early ruling and the plain letter of the statute it has been often held the husband can reduce his wife's personalty to his possession in one way only, namely, by procuring her written assent. *Broughton v. Brand,* 94 Mo. 169 ; *Gilliland v. Gilliland,* 96 Mo. 522 ; *Hart v. Leete,* 104 Mo. 315.

"2.   But it is insisted the blank indorsement of this check is a good and sufficient written assent on the part of the wife, and this because the indorsement of commercial paper in blank constitutes a complete and perfect transfer of all the interest of the indorser and vests in the indorsee full ownership of the bill.   A blank indorsement of a bill for value does import all this and more, the same as if the undertakings were written out in full.   These implied agreements are a part of the contract created by the blank indorsement.   But, as between the indorser and indorsee, it may be shown the indorsement was upon trust for some special purpose, as from a principal to an agent, to enable him to use the instrument or money in a particular way, or for collection merely.   1 Dan. Neg. Inst. [2 Ed.] sec. 721.   The indorsement in this case was without consideration, and was just such an indorsement as would have been proper, had the check been handed to the husband for the purpose of collecting the money for the wife.   The mere indorsement of the check by the wife and delivery thereof to the husband is not an express assent that he may collect the money for his own use and benefit. *Franc v. Nirdlinger,* 41 Ohio St. 298.

"Our statute still allows the husband to reduce his wife's personal property to his possession, but this only with her *express* assent.   The word *express* is used in its ordinary legal signification in contradistinction to *implied;* as *express* warranty, an *express* contract.

But the statute goes further and says the terms of this express assent must be in writing and give the husband full authority to sell, incumber or otherwise dispose of the property for his own use and benefit. It is, therefore, clear that implied agreements, whether arising from a blank indorsement or otherwise, do not satisfy the demands of this statute. The terms of the assent must be set forth in the writing giving the consent, and that was not done in this case.

"3. An instruction was asked by the defendant based upon the theory that Mrs. Allen could and did make a parol gift of the check to her husband, which instruction was refused. There was evidence to support the instruction, so the question is whether a parol gift by her conferred upon him a full and complete title to the check and the money it represented.

"It seems to be well-settled law that a married woman may bestow her separate property in equity by appointment or otherwise upon her husband as well as upon a stranger. 2 Story Eq., sec. 1395. But courts of equity always examine such a transaction with great care and caution to see that the wife acted from her own will and wish, and not from any undue influence. Says Schouler: 'While instances of gifts or voluntary conveyances from husband to wife are most commonly considered, gifts from wife to husband are by no means rare. But in the latter instance fraud or undue influence may be reasonably suspected; and transactions of this sort are scrutinized by the courts with great care. Before the wife's separate use was established in chancery, little or no occasion could arise for the wife to bestow her personal property upon her husband, for the law sufficiently bestowed it without her aid.' Schouler on Hus. & Wife, sec. 390. Our statute before quoted secures to the wife her choses in action and personal property and declares that the same shall remain her separate property and under her sole control. This statute, however, according to its own terms, does not

affect the title of the husband to any of the wife's personal property reduced to his possession with her express written assent.    The question then is whether the husband can acquire his wife's separate statutory property by a parol gift, and we conclude he cannot, and for these reasons :    He cannot acquire it by reducing it to his possession with her parol consent.   Now it is difficult to draw any distinction between a parol gift of personal property by the wife to the husband and a reduction of the same property to his possession with her parol assent.    The one being prohibited by the statute, the other must be prohibited ; for there is no real or substantial difference between the two transactions.    In construing and applying this statute we must look to the substance of the particular transaction and not simply to the name by which it may be called.    To attempt to build up any distinction between a parol gift by the wife to her husband and a reduction of her property to his possession with her parol assent is to break down and destroy the statute.    The statute may and in this case appears to work out a hardship, but the remedy is with the legislature.

"As to whether the wife may, for a valuable consideration, sell and transfer her statutory separate property to her husband in the manner and by the means that she may sell and transfer it to a third person we express no opinion, for that is not the case in hand.    The judgment must be and is, therefore, affirmed."

Full argument was had before the court *in banc*, and, after careful examination of the questions involved, we adhere to the result reached in division number 1, as well as the reasoning upon which the result was reached. The most perplexing problems the courts have to deal with grow out of the property rights of husband and wife, owing to their close, confidential and business relations.    The possession of personal property by one is usually the possession by the other, so far as appearances go.

Judicial history teaches that husband and wife can, with great facility and plausibility, impress transactions between themselves with that legal effect which their interest or caprice may dictate. And it was no doubt this consideration that impelled the legislature to enact the statute referred to in Judge BLACK's opinion herein.

Very able and exhaustive arguments have been presented to show that the indorsement in blank of a bill, bond or note by a wife, and delivery thereof to her husband, meets the requirements of the statute. We do not think so. Without attempting to state what the writing required by the statute must be in form and substance in all cases, we will say that it must *unequivocally transfer the title to the property of the husband.* And it is evident a blank indorsement of negotiable paper, giving it the full effect the law attaches to it, is not such a writing ; for it is conceded that the contract created by a blank indorsement is an implied one, and may be explained by parol. If it should be held that an indorsement and delivery of negotiable paper was a writing within the meaning of the statute, the very evils the legislature intended to remove would still remain. If it was found to be to the interest of the parties to say it was an absolute transfer of the title, they could say that ; if it was to their interest to say that the indorsement and delivery to the husband was merely to authorize him to collect the money for the wife, they could say that, and in either case it would be a difficult matter to contradict them. The best interests of husband and wife, and their creditors and others dealing with them, require some fixed rule by which their rights can be ascertained and adjudicated.

The judgment is affirmed. All concur, except BARCLAY, J., who dissents.

BARCLAY, J. ( *dissenting* ).—This case has considerable importance. It directly involves (among other issues of law ) the proper interpretation of a large class of indorsements of commercial paper.

I. Viewing it, first, from the standpoint taken in the foregoing opinions, is the contract of indorsement an express or implied one? It is held therein to be implied only, and the result is made to turn on that distinction. It is held that a wife's indorsement to her husband of a check drawn to her order ( and which, admittedly, represented her separate property ) is not an "express assent" by her "in writing," conferring "full authority" "to sell, incumber or otherwise dispose of the same for his own use and benefit."

It is stated that a bank indorsement "for value does import all this, and more;" but that import is said to be "implied," and, because not "express," the indorsement is held inoperative to pass title to the indorsee in this instance.

An indorsement in blank has always seemed to me an express contract. To adopt the words of another : "It is a commercial contract, and is not in any proper sense a contract implied by the law, much less an inchoate or imperfect contract. It is an express contract, and is in writing, some of the terms of which according to the custom of merchants and for the convenience of commerce, are usually omitted, but not the less on that account perfectly understood. All its terms are certain, fixed and definite, and, when necessary, supplied by that common knowledge, based on universal custom, which has made it both safe and convenient to rest the rights and obligations of parties to such instruments upon an abbreviation. So that the mere name of the indorser, signed upon the back of a, negotiable instrument, conveys and expresses his meaning and intention as fully and completely as if he had written out the customary obligation of his contract in full. *Martin v. Cole* ( 1881 ), 104 U. S. 30.

The language just quoted was applied to a case where the point of decision was whether or not the contract (created by an indorsement) was a contract "in writing." It was held that it was in all its parts. That case has since been cited approvingly and followed in *Falk v. Moebs* (1888), 127 U. S. 597, and *De Witt v. Berry* (1890), 134 U. S. 306.

The principle underlying *Martin v. Cole* has been recognized in Missouri in the cases excluding evidence of contemporaneous verbal agreements, varying the contract of indorsement. Such evidence has been rejected because that contract has been treated as if written out at large. *Rodney v. Wilson* (1877), 67 Mo. 123; *Beeler v. Frost* (1879), 70 Mo. 185; *Lewis v. Dunlap* (1880), 72 Mo. 174; *Gardner v. Mathews* (1884), 81 Mo. 627.

In those jurisdictions where such evidence has been admitted, a reason assigned therefor has been that the contract of indorsement was merely an implied one, and, hence, that a different verbal agreement by the parties, in any particular case, might be shown without thereby contradicting a writing. *Ross v. Espy* (1870), 66 Pa. St. 481, and *Johnson v. Martinus* (1827), 9 N. J. L. 144, are types of rulings to that effect. The latter has been overruled by *Chaddock v. Vanness* (1871), 35 N. J. L. 517.

But that idea has not been received favorably in this state, as the group of our home decisions above cited will show. Those cases indicate that this court then regarded an indorsement as fully expressing the entire agreement it is admitted to "import." Compare *Halford v. Railroad* (1851), 16 Adol. & E. (N. S.) 442.

The adjective "express" is defined by Worcester to mean, "given in direct terms; "definite;" "explicit;" "plain;" "manifest;" and, as an illustration of these meanings, he cites this quotation: "By formal, *express* consent. *Hooker*."

McGuire v. Allen.

Webster gives, among others, these definitions: "directly stated ;" "clear ; plain ; as, *express* consent." (The italics are in the originals.) Does the full effect or "import" of an indorsement in blank fall within the range of these definitions? It seems to me it does. Such, at least, is the significance such indorsement has in the law merchant, though it seems not, at present, in the law of husband and wife.

II.  A logical and necessary deduction from the conclusion reached by my brethren is that an ordinary indorsement in blank of commercial paper by a wife to her husband (at least where their relationship is exhibited on the paper, or is known to the taker), does not subject her (with respect to her separate statutory estate) to the liability of an indorser to subsequent indorsees.

The facts here are that the check was paid by the banking company on which it was drawn, in accordance with the supposed indorsement by the payee.

The check was produced, at the trial, from the custody of a third party to it, and then appeared duly indorsed, as has been stated. The inference from such a state of facts unexplained, it seems to me, is that the indorsement was for value; hence, the holder was entitled to recover upon the check, according to its terms. But the consideration of the transfer is open to inquiry between immediate parties ; and, if resort be had to the extrinsic evidence to that point in this case, it discloses without contradiction that the wife intended the transaction as a gift of the fund in question to her husband ; and that she, likewise, intended to prevent its reaching the hands of those to whom it will now go under the final rulings herein. That evidence affirmatively shows that the title to the check and fund was intended to pass to the husband absolutely, as, *prima facie*, it did pass by the indorsement.

The facts in question occurred in August, 1883, after the act of that year (Sess. Acts, 1883, p. 113 ).

relating to married women, took effect. The latter added to section 3296 of the revision of 1879, as quoted in the first opinion above, the following language, viz.: "And any such married woman may, in her own name, and without joining her husband as a party plaintiff, institute and maintain any action, in any of the courts of this state having jurisdiction, for the recovery of any such personal property, including rights in action, as aforesaid, with the same force and effect as if such married woman was a *feme sole.* Any judgment for costs in any such proceeding rendered against any such married woman may be satisfied out of any separate property of such married woman, subject to execution."

Viewing the section in its entirety, what is its true meaning with reference to the point of present difference? "Reduction to possession" is a phrase well known to the law. A husband, under the common law, might have reduced such a piece of commercial paper to his possession, by himself indorsing his wife's name thereon and negotiating it, as well as by other acts of his own towards it. The statute was intended to prevent the acquisition, by any act of the husband alone, of title to the wife's statutory separate property, and to exclude the inference of any transfer of such title to him, by reason of any act of his ( of which specific illustrations are mentioned, namely : "By his use, occupancy, care or protection thereof"), without her "express written assent" thereto; but it seems to me it was never intended to deprive her of the full enjoyment of such personal property by interfering with its transfer by her own act, if taken in good faith and of her own free will.

The opinions of my brethren admit that she might thus dispose of her equitable sole and separate estate of this nature, even to her husband; yet they declare she cannot do the like with such separate property as this statute vests in her. The reason for such a distinction, as well as the distinction itself, is too delicate for

me to discern, notwithstanding the able efforts to point it out.

The first part of the section should not be lost sight of entirely, in so close a scrutiny of the proviso. The prime object of the former is to invest the wife with the title to such property and with its "sole control." The right to dispose of it by honest gift or otherwise, as she may see fit, is one of the most important and valuable incidents of complete title and control. She has the right to sue for it alone, and should be conceded the enjoyment of all the benefits of legal ownership.

All parts of the section should be given full force, if possible. Limitations upon her rights as owner should not be extended by construction, beyond the plain words of the law.

In Georgia, under a statute prohibiting a sale by the wife to her husband, without an approval by order of court, it was held, that a gift by her to him was not within the inhibition. *Cain v. Ligon* (1883), 71 Ga. 692. That decision well applies the principle just stated.

The transfer of commercial paper to the husband in this case by the wife's regular indorsement in blank does seem to me a reduction to possession by him within the meaning of our statute.

The act which gave the transaction life and legal vigor was her act, not his.

As to such separate estate, her indorsement of a negotiable instrument should have the same force and be attended with like consequences as if she were single.

The effect of the ruling of my learned associates appears to me to limit both her rights and liabilities respecting such property to a compass too narrow to embrace the full intent and meaning of the law on the subject.

These are, briefly, some of the reasons that have led me to enter this respectful dissent from the conclusion announced by them.