Louisa J. Stone, Respondent, v. Gilliam Exchange Bank, Appellant.

### Kansas City Court of Appeals, May 29, 1899.

1. **Married Women**: SEPARATE PROPERTY: INDORSEMENT OF CHECK: STATUTE. A married woman's indorsement on a check payable to her "Pay F. M. Stone (her husband) or order".is not such an express assent in writing as places the title to the property in her husband under the statute, but simply authorizes the husband to collect.

2. ———: ———: AGENCY: STATUTE: PAYING CHECK ON WIFE'S ORDER. The wife may by writing or otherwise authorize her husband as agent to draw her money from the bank and the statute presents no hindrance to such agency, but such agency is quite distinct from the assent required to vest the title in the husband under the statute; and where the bank obeys the order of the wife it is not responsible for the breach of faith of the husband.

3. ———: ———: ———: JURY QUESTION. Whether the husband has authority as agent of the wife to draw her money from the bank, and whether such authority was withdrawn, are jury questions.

4. ———: ———: ESTOPPEL OF WIFE: STATUTE. A married woman may be estopped as to others than her husband by her conduct in letting him handle her property as his own, but in passing on such question her peculiar relation to her husband must be considered. As to her husband she can only be estopped by following the statute.

*Appeal from the Saline Circuit Court.*—Hon. Richard Field, Judge.

Reversed and remanded.

D. D. Duggins for appellant.

(1) The transfer of the checks by the plaintiff to her husband, F. M. Stone, was not by indorsement in blank but by written assignment in full, in her own handwriting, and signed by herself. This assignment had the legal effect to

put the title of said checks in her husband and gave him full power and authority to collect them and use the proceeds as he saw proper; and this is even true of a blank indorsement. Bank v. Bank, 71 Mo. 183. (2) The written assignments of the checks, by the plaintiff to her husband, was a full compliance with the statute and was her assent, in writing, giving her husband full authority to collect the checks, use the proceeds, and gave him full authority to put the money in the bank as he saw proper. R. S. 1889, sec. 6869. (3) The letter written by the plaintiff to the bank, of date July 1, 1896, did not contain an intimation that plaintiff's husband had no authority to draw on the fund, but was only an expression of fear that if he had drawn the money he had gone with it. (4) The letter of date July 1, 1896, of plaintiff to defendant's officer, his reply thereto, and her second letter written the next day after her husband's return home, asking the bank to destroy her letter of the day previous, that it was all right, constituted her assent in writing, giving her husband full authority to draw said money, even if it had been deposited in the wife's name, and not to the use of the husband.

R. B. CAPLES for respondent.

(1) Respondent's declarations correctly give the law. The appellant could not legally pay this money to respondent's husband, except upon her express assent in writing. R. S. 1889, sec. 6869; Rodgers v. Bank, 69 Mo. 560; Gilliland v. Gilliland, 96 Mo. 522; McGuire v. Allen, 108 Mo. 403; Jones v. Elkins, 143 Mo. 647. The assent must be express, not implied. McGuire v. Allen, 108 Mo. 403; McGregor v. Pollard, 66 Mo. App. 324. (2) There is no estoppel in this case. The liability of appellant became fixed the moment it paid out the money, and she could bring her action at any time within the period of limitation. Eystra v. Capella, 61 Mo. 578. (3) Respondent was under no obligation to protect or make any effort to prevent her husband using the money after the bank

had illegally paid it to him. She was not required to destroy her domestic peace and endanger the marriage relation by open repudiation or hostile conduct towards her husband in order to save her property. Rodgers v. Bank, 69 Mo. 560. (4) The second letter written by respondent and set up as an estoppel, gave the appellant no authority to pay out the money and can not be used to estop the respondent from recovering. R. S. 1889, sec. 6869.

ELLISON, J.—This is an action to recover of defendant the amount (less $20) of two checks, one for $597 and the other for $298. Plaintiff prevailed in the trial court. The following are the facts necessary to an understanding of our decision. Plaintiff is a married woman, her maiden name being Louisa J. Eversman, but before her marriage she had sold some real estate, the checks being for the sale money On the next day after her marriage she indorsed each check to her husband; the checks and indorsements being as follows:

STATEMENT.

"Gilliam, Mo., June 5th, 1896.
"Gilliam Exchange Bank—
"Pay to Robert H. Land, or order, $597.00, five hundred and ninety-seven and no .100 dollars.
"Phillip Buck."
On the back—"Pay to Louisa J. Eversman or order—Robert H. Land."
"Pay F. M. Stone or order—Louisa J. Eversman." Cred. acct. of Mrs. F. M. Stone.
"Gilliam, Mo., June 10th, 1896.
"Gilliam Exchange Bank—
"Pay to Louisa J. Eversman, or order, $298.00, two hundred and ninety-eight and no .100 dollars.
"Robert H. Land."
On the bank—"Pay to F. M. Stone or order—Louisa J. Eversman," cred. acct. of Mrs. F. M. Stone.

The husband took them to the defendant bank and deposited them less $20 which he retained.   The bank cashier testified that the deposit was placed on a deposit slip "to the credit of Mrs. F. M. Stone for the use of F. M. Stone," though the deposit as placed on the books appears to be simply to the credit of Mrs. F. M. Stone, and the checks themselves bore the memorandum, "cred. acct. Mrs. F. M. Stone."   Shortly thereafter Stone left the plaintiff for near a week, she not knowing what had become of him.   During his absence she wrote the cashier the following note:

"Gilliam, Mo., July 2, 1896.

"Mr. Kirk—Dear Sir:   Will you please inform me how I stand in the bank, as I have not given any checks, if Frank has drawn any money he has gone with it, if not do not let him have it.   Please let me know.   Send the letter by Mr. Stone. Please send me $5, five dollars in the letter and oblige,

"Mrs. F. M. Stone."

And he answered as follows:   "Your account after this item of $5 leaves you $870 to your credit.   Yours, etc., J. R. Kirk, Cashier."

The next day her husband returned and she wrote to the cashier the following:

"Slater, Mo., July 5, 1896.

"Mr. Kirk—Dear Sir:   Please destroy the note I sent you.   It will be all right, and oblige,     Mrs. F. M. Stone."

Afterward on July 16, the husband drew out on the following check the full balance $870 for which this suit is brought:

"Gilliam, Mo., July 16, 1896.

"Gilliam Exchange Bank—

"Pay to Farmers' Savings Bank, $870.00.   Eight Hundred and seventy and no hundred dollars.

"Mrs. F. M. Stone,

"By F. M. Stone."

Plaintiff did not know he had drawn the money at the time, though there was evidence tending to show that she learned of it shortly thereafter and that she took no steps to protect herself. There was also evidence tending to show that a greater part of the money was used in the purchase of property in Illinois, in traveling and other family expenses.

The cause was tried by the court without a jury on the following declarations of law in plaintiff's behalf, none being given for defendant:

1. "Under the law and evidence in this case the finding of the court should be for the plaintiff, as prayed in her petition."

2. "The second note written by the plaintiff, asking defendant to destroy her first letter, even when taken in connection with plaintiff's first letter, did not authorize defendant to pay said money to plaintiff's husband, as both letters, when taken together or separately, do not amount to an express assent of plaintiff to the defendant's paying said money to her husband."

3. "Under the law in this case the defendant had no right to pay the $870 deposited to the credit of plaintiff, Mrs. F. M. Stone, to her husband without the express assent of plaintiff, in writing; and the letters of plaintiff to the defendant do not amount to anything more than an implied assent, even when construed most favorably to defendant."

4. "There is no proof of facts constituting an estoppel. The plaintiff was not required to openly repudiate the acts of her husband in order to save her property and thereby disturb the peace of her family or endanger the marriage relation. The liability of defendant became fixed when it paid out the money on deposit without the express assent of plaintiff in writing."

1. Defendant takes the broad ground (above any question of agency) that the plaintiff's indorsement on the note

was her express assent in writing as required
by the statute and that therefore the money
called for by the checks actually became the
husband's.    The words of the indorsement
were: "Pay F. M. Stone or order."    The
statute is that the assent in writing must contain full authority
"to the husband to sell, encumber or otherwise dispose of the
same for his own use and benefit."    Do the words of indorse-
ment fill what is required by the statute?    We think not.    It
has already been held that a blank indorsement does not.
Moeckel v. Heim, 46 Mo. App. 340; McGuire v. Allen, 108
Mo. 403.    The written indorsement here is no more than
authority for the husband to collect the money due on the
check.    This he could do and the payor would be justified in
paying it to him for the simple reason that there is a direct or-
der to do so. But the writing by no means *puts the title in the
husband* in the manner required by the statute.    It is not such
writing but what could be explained by parol.    It is just
such writing as is frequently given to agents.    The writing
itself must, to meet this section, contain express assent that
the property shall become the husband's for his own use and
benefit.    The character of possession must be expressly shown
by writing.

2.    But plaintiff has placed her chief reliance on the
statute aforesaid, section 6869, Revised Statutes, 1889,
wherein it is enacted, as stated above, that the
wife's property shall not be considered the hus-
band's by his use, care or protection thereof
unless by the express written consent of the
wife full authority may have been given the husband to sell
or dispose of the same for his own use.    She contends as we
have decided that the indorsement of the checks did not make
the money that of the husband and that *therefore the defend-
ant is necessarily liable to her for having paid it to him.*    But
this does not follow.    We can not see what bearing that

MARRIED women:
separate prop-
erly; indorse-
ment of check:
statute.

——: ——: agency:
statute: paying
check on wife's
order.

Stone v. Bank.

statute has on the facts of the case in the respect we shall now consider it after eliminating plaintiff's contention that the indorsement itself made the money that of the husband. It is true that in so far as concerns any claim of the husband, his legal representatives or heirs, the property will remain that of the wife unless it has been put into his possession in the manner and for the purpose pointed out by the statute And she or her heirs may follow it or its proceeds. Broughton v. Brand, 94 Mo. 169; Seay v. Hesse, 123 Mo. 450; Jones v. Elkins, 143 Mo. 647. But that statute does not disable the wife from dealing with her money through an agent. A case under the statute and one involving the question of agency are to be distinguished. The husband may be the wife's agent and if she authorizes him as her agent to draw her money out of the bank, the statute presents no hindrance. The case, in the respect now considered, bears no likeness to Moeckel v. Heim, 46 Mo. App. 340, or McGuire v. Allen, 108 Mo. 403.

Again, there is no reason why a wife in possession of a check payable to her and representing her money, may not direct that it be paid to her husband by indorsing an order to that effect on the back thereof. In such instance the bank obeys the order of the wife, the owner of the money, and is in no way responsible for any default or breach of faith of the husband to the wife. The statute referred to has no application to such case.

Applying the evidence to the foregoing statement of what we consider to be the law, we will say that if on retrial it appears that the bank knew the husband only had the checks for deposit for his wife and that he did deposit them in her name then it is liable for paying to him afterward on a check signed by him unless it is believed that she authorized him to draw it. The case of Rodgers v. Bank, 69 Mo. 560, decides no more than this. The evidence contained in the correspond-

—: —: —:
jury question.

ence between plaintiff and the cashier as well as their oral testimony makes this a question peculiarly for the jury. So with the question whether plaintiff after directing that no money should be paid to her husband, afterward withdrew such direction.

The wife may be estopped, as to others than her husband, by her conduct in letting him handle her property as though his own. But in passing on a question of estoppel where the wife comes in contact with the husband, the peculiar relation they bear to each other should be considered. McClain v. Abshire, 72 Mo. App. 390, 396. As to the husband, the statute aforesaid finds application and she can only be estopped as to him by following the provisions of the statute. Leete v. Bank, 115 Mo. 204.

—: —: estoppel of wife: statute.

We make these suggestions as to estoppel not knowing just what scope the case may cover at another trial. But it should be borne in mind that estoppel to be successfully invoked must arise from something which induced the party affected to take the action charged against him. Therefore all those things which transpired *after* defendant let the husband have the money have no bearing, since they could not have induced defendant's action.

From the foregoing it follows that the judgment must be reversed and the cause remanded. All concur.