BRACE, P. J.
This is an appeal by the defendants, to the Kansas City Court of Appeals, from a judgment of the circuit court of Grundy county in favor of the plaintiff for the sum of $1,935.11. The judgment of the circuit court was affirmed by theKansas City Court of Appeals, but the case was certified here on the ground that one of the judges of that court deemed the decision contrary to a previous decision of this court.
The dissenting opinion of Smith, P. J., contains the following sufficient statement of the case:
“This is an action to recover of the defendants the proceeds of a certain negotiable promissory note collected by them and alleged to have been wrongfully detained, etc.
“Elder & Hurt were a co-partnership of druggists engaged in business at the village of Galt, in this State. ' The plaintiff is the mother-in-law of the former and the wife of the *427 latter. In the early part of February, 1891, the defendants, who were private bankers also doing business in said village, held a number of claims against Elder & Hurt, which had been sent them for collection. Hurt applied to the defendants for a loan of $526.77 to the co-partnership, with the proceeds of which he proposed to pay the claims the bank held. He offered, as collateral security, a note for two thousand dollars, made by Abner George and payable to the order of plaintiff, due and payable in the month of September following and which said note was indorsed by plaintiff in blank. The defendants made the loan applied for, taking the note of Elder & Hurt therefor and accepted the said George note as a pledge to secure the payment of the said note of Elder & Hurt. Previously, on the 16th day of February, 1891,Elder & Hurt had borrowed of the defendants one thousand and three dollars and seventy-eight cents, for which they had given their promissory note, payable ninety days after the date thereof, and to secure which they had executed a chattel mortgage covering their stock of drugs.'. When the latter note fell due, the defendants notified them that unless they paid the same, they (defendants) would foreclose the mortgage. Hurt, at this juncture, proposed to the defendants that if they would not foreclose the mortgage and extend the time of the payment of the mortgage debt until about the middle of September following, when the George note, pledged to defendants as already stated, would be due, he would further pledge said note for the payment of said mortgage debt and for any further sums that defendants should thereafter advance Elder & Hurt. This proposition was accepted by defendants and the time of the payment of the mortgage debt was accordingly extended.
“The amount advanced to Elder & Hurt on checks and drafts drawn by them on defendants and for which said George note was pledged under said agreement was three hundred and twenty-three dollars and sixty-eight cents. When *428 the George note became due they were compelled to pay out as costs and expenses for having the said note probated against the estate of the said George who had, in the meantime, deceased, the sum of one hundred and thirty-three dollars and fifty-seven cents.
“The defendants collected of the George estate the said note and interest thereon, amounting to $2,534.57, and the plaintiff recovered judgment against defendants in the circuit court for that amount, less the amount of the note for which said George note was pledged in the first instance. The defendants have appealed.
“It is conceded that the plaintiff’s husband -was authorized by her to pledge said George note to defendants, to secure the payment of the note of Elder & Hurt for $526.77.
“The principal contention arises out of the action of the trial court in refusing the defendants’ instructions numbered 4, 5 and 6, which are as follows:
“4. It is admitted that the plaintiff authorized A. R. Hurt to indorse her name on the bach of. the $2,000 note dated August 6, 1890, and authorize the same to be pledged and delivered to the defendants as a security to secure a loan to the firm of Elder & Hurt amounting to $526.77 by defendants; and if the jury believe from the evidence, that said Elder & Hurt afterwards, on or about the 16th day of May, 1891, pledged the said $2,000 note to the defendants as a further and collateral security to secure the payment of a note of $1,003.78, which the said Elder & Hurt owed to defendants and which was due at the time, dated February 16th, 1891, and due ninety days after date, bearing ten per cent interest from date, compoundable annually, on condition that said defendants would extend the time of payment of said note of $1,003.78 until September thereafter,and that the defendants, in consideration of said $2,000 note being so left and deposited with and assigned to them as collateral security to secure the payment to them of said note of $1,003.78, did accept and *429 receive said note of $2,000 as such collateral security and did extend the time of payment of said note of $1,003.78 until the-day of September, 1891, in good faith, believing that said Elder & Hurt, or said Hurt, were the lawful owners of the said note and that said plaintiff had by said indorsement thereon assigned and transferred said note to said Elder & Hurt, or said Hurt, and had no interest in or claim to said note, then the jury will find for the defendants for the amount of the principal of said note of $1,003.78, with the interest thereon until the same was paid out of the proceeds of said $2,000 collateral note which was about the 31st day of May, 1894.
“o. And if the jury believe that after said $2,000 note had been so transferred and deposited with defendants, defendants from time to time loaned to said Elder & Hurt by checks or overdrafts, various sums of money, and that at said times it was agreed between defendants and said Elder & Hurt that the said $2,000 note should remain and be taken as security for the payment of said checks or overdrafts, and that said loans by checks or overdrafts were made by defendants in good faith, believing that said Elder & Hurt or said Hurt were the lawful owners of said $2,000 note and that plaintiff had by her indorsement on the back thereof assigned and transferred all her interest therein to said Elder & Hurt, or said Hurt, then the jury will find for defendants for the amount of said overdrafts for which said $2,000 note was pledged as security.
“6. Under the pleadings and the evidence in this case, the jury will find and allow to defendants for any and all sums of money loaned to the firm of Elder & Hurt on the strength of and for which said $2,000 Abner George note was pledged as security after the same was deposited with defendants or their cashier, Eiehard J. Green, if the jury further believe from the evidence that plaintiff authorized her name to be indorsed on the back of said note and delivered the same, know *430 ing that it was going to be deposited as collateral security with the defendants, unless the jury believe from the evidence that defendants or their cashier, Richard J. Green, knew that said note was delivered and transferred only to be used as security for an indebtedness or a loan of $526.YY to be made to the firm of Elder & Hurt by defendants.
“This contention must be determined by the construction that is to be placed upon sections 6864 and 6869, R. S.”
The opinion of the majority of the court, by Gill, J., concurred in by Ellison, J., is as follows: “In my opinion this judgment ought to be affirmed. To compel Mrs. Hurt under the admitted facts to be the unwilling loser of the Abner George note would it seems to me, be in violation of the express terms of section 6869 (R. S. 1889), which was intended to protect the wife from the unauthorized acts of her husband. That said $2,000 note — executed by her father and payable to her individually- — was her statutory separate property and free from any interest in or control of her husband is not, and can not be, disputed. Being so, the statute (sec. 6869) has - definitely prescribed how, and only how, her husband can take it and use it for his own benefit. It can only be done by the express written assent of the wife. The husband will not be deemed to have reduced such property to his uses and possession ‘by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, encumber or otherwise dispose of the same for his own use -and benefit . . . ; and any such married woman may, in her own name and without joining her husband as a party plaintiff, institute and maintain any action . . . for the recovery of any such personal property, including rights in action, as aforesaid, with the same force and effect as if such married woman was a feme sole/
“The effect to be given this statute has been several times before the appellate courts of this State. McGuire v. Allen *431 (108 Mo. 403), tried before Division one and also in Bane, is particularly applicable to this case, and it seems to me is controlling. Speaking for the court, Judge Black uses this language : . ‘As to all her [the wife’s] personal property and choses'in action she is in effect a feme sole and the common law right of the husband to reduce her property to his possession is restricted to the method pointed out in the statute. As said by this court in the case of Dodgers v. Bank, 69 Mo. 563, “to put an end to all investigations, the law plainly requires the assent of the wife to be in writing. . . . It is the obvious intent of our recent legislation to restrict within the narrowest limits the power of a husband over his wife’s personalty. Such legislation may lead to hardships, as it does apparently in the present case; but the judiciary have no concern with the policy or impolicy of legislative enactments. The Legislature have required the written assent of the wife to the husband’s reductions of her personal property to his possession.” Following this early ruling and the plain letter of the statute, it has been often held that the husband can reduce his wife’s personalty to his possession in one way only, namely, by procuring her written assent. [Broughton v. Brand, 94 Mo. 169 ; Gilliland v. Gilliland, 96 Mo. 522 ; Hart v. Leete, 104 Mo. 315.]
“In McGuire v. Allen, supra, it was also decided that a mere blank indorsement of the wife’s name on the back of the note did not constitute that express assent in writing required by the statute, and to the same effect we held in Moeckel v. Heim, 46 Mo. App. 340. The implied agreements which an ordinary blank indorsement of commercial paper carry with it will not satisfy the statute directing how the wife may assign to her. husband. The statute requires the terms of the wife’s assent to be in writing; it is not enough that such consent may be implied.
• “In view then of the provisions of the statute above referred to (sec. 6869), it is clear to my mind that when Mrs. *432 Hurt, .the plaintiff, indorsed her name on the back of the George note and gave it into the hands of her husband, the statute was not complied with, and he acquired no right to take and use the same for his individual or even partnership purposes. Whether the note was devoted to the one or the other purpose was immaterial, for in either event it was for the husband’s own use and benefit and not for that of the wife.
“The defendants knew, when they took the note in the first instance for the security of the $526 loan which they made to plaintiff’s husband, that the payee of the note (Mrs. Hurt) was the wife of the party they were dealing with. They were, too, bound to know the law and that Mr. Hurt could not legally use the George note (his wife’s property) for his own purposes unless authorized by the written consent of the wife. And so it may be said as to the subsequent and further loans made to the husband on the alleged faith of the paper. It matters not that the husband at the time claimed ownership of the note. The defendants had before them notice that it was the wife’s property, it was in terms payable to her, and she can not be held responsible for the misstatements of her husband, and of which she knew nothing. The statute spoke up for the wife’s protection, and declared that as she had not in writing by express terms authorized the husband to appropriate the note to his own purposes, it was still her separate property and under her sole control. That the husband had the note in his possession, claiming ownership, did not evince the truth of the claim, for, says the statute, ‘said personal property shall not be deemed to have been reduced to possession by the husband by his. use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent in writing full authority shall have been given by the wife to the husband to sell, encumber or otherwise dispose of the same for his own'use and benefit.’
“In my opinion ¿so it was not intended by the enactment of section 6864, which first appeared in the revision of 1889, *433 to change or modify the law as contained in section 6869. It is true that by said section 6864 it is provided in general terms that the wife may carry on and transact business on her own account, may contract and be contracted with, sue and be sued etc.,yet I take it that it was not thereby meant to deprive her of those safeguards for her protection set out in section 6869. It was manifestly intended by the legislature to retain those restrictions thrown around the wife’s property rights and thereby protect them from the often improvident and unauthorized acts of her husband. If-not, why was section 6869 continued in the same revision and same chapter along with 6864? In construing these statutes, it is our duty to harmonize and regard them both as effective rather than as one repealing the other by implication. [Brown v. Dressler, 125 Mo. 589 ; Bartlett v. Roberts, 66 Mo. App. 125.]
“Defendant’s counsel have invoked the principle that where the owner of a note or other personalty shall clothe another with apparent ownership, and the property thereupon is sold or pledged to an innocent third party, then the real owner will be estopped from setting up title as against such third party. But this rule has no application here. As to these defendants Mrs. Hurt did not clothe her husband with the apparent ownership of the Abner George note. They knew Mrs. Hurt was the payee and therefore owner of the note, and they knew moreover that the party who pledged it to them was ‘the husband of the owner. Hence they knew that he was'not clothed with the legal evidences of ownership, because the note was not transferred to him as the law required, nor was he legally authorized by the written assent of his wife to pledge or sell the same. The evidence does show, however, that the plaintiff knew at the time she gave the note into the possession of her husband that he was to use it as collateral for a loan of $526 then to be obtained by her husband from defendants, and she consented that the note might be used for that purpose. And in this action she yields to its application *434 in the payment of the $526 loan, but refuses to allow the remainder of the note, or rather the amount collected thereon, to go to the satisfaction of other subsequent loans to her husband and of which she had no knowledge, and for which she never consented that her property should stand as security. The plaintiff therefore did not knowingly suffer her husband to use the note in question as collateral security for any sum other than the first or $526 loan, and is not then estoj>ped from objecting on account of such other loans. The case then differs materially from that of Leete v. Bank, 115 Mo. 184, so much relied on by defendants’ counsel, for there it appeared that diiring the period of 12 years the wife knowingly permitted her husband to use the money as his own and that by reason thereof he obtained a fictitious credit, etc.
“Neither do I think defendants have cause to complain of the insufficiency of the tender of the amount due on the $526 loan. On evidence tending to so prove, the jury in effect found that Mrs. Hurt went to defendants’ bank and there offered to pay said debt and interest, requesting at the same time that the Abner George note for $2,000 be surrendered to her, but the cashier refused to accept the same unless the whole amount borrowed by the husband, in all about $1,900, was likewise paid.
“As a general rule, to make a tender of money valid, the money must'be actually produced and offered, unless the creditor expressly or impliedly waives this production; and the* •creditor may not only waive the actual production of the money, but the actual possession of it in the hand of the debtor. [Berthold v. Reyburn, 31 Mo. 586.] The formalities of a tender were in this case waived by the defendants insisting upon the payment of other claims than that for which the plaintiff’s property was liable. [Whelan v. Reilley, 61 Mo. 565.]
“So, too, it would be equally unjust to allow defendants attorney’s fees and expenses for collecting the Abner George *435 note. After Mrs. Plurt’s tender and offer to pay the $562 loan (which was the most that could be charged against the George note) the defendants were wrongdoers. They had no right to retain the note, nor were they authorized to collect the same. They can not therefore base a charge on their own wrongful conduct.”
A careful reading of the opinion of the dissenting judge fails to disclose to our minds any previous decision of this court with which the decision of a majority of the court in this case is in conflict. On the contrary, finding the decision in harmony with the previous rulings of this court, and expressive of the views we have always hitherto entertained and still hold as to the proper construction of sections 6864 and 6869, supra, upon which the whole case turns, properly applied to the facts in judgment in this case, we concur therein, and affirm the judgment of the Kansas City Court of Appeals. There is nothing in the only new point raised in this court, that Mrs. Hurt may have been married prior to the year 1815. Whenever she was married, her right to the property accrued under the Married Woman’s Act, and is governed thereby. [Winn v. Riley, 151 Mo. 61.]
All concur.