## MARY W. McMAHON, Respondent, v. JAMES B. WELSH, Appellant.

### Kansas City Court of Appeals, June 29, 1908.

1. **BILLS AND NOTES: Married Women: Wife's Consent: Blank Endorsement: Statute.** The blank endorsement by a wife on a note payable to her is not such express consent as to authorize the husband to dispose of the note for his own use as required by section 4340, Revised Statutes 1899.

2. **———: ———: ———: ———: Evidence: Instruction.** The evidence relating to a special endorsement on a note by a wife is reviewed and an instruction assuming that the endorsement was not hers and without her consent is approved, the more so since a person holding under such endorsement must prove it.

3. **———: ———: ———: Estoppel: Evidence.** The evidence relating to the conduct of a wife whose note was held by the defendant is reviewed and she is held not to have estopped herself to reclaim the note from the defendant.

132 App—38

McMahon v. Welsh.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) The peremptory instruction given by the court of its own motion (in such language as to render useless the discussion of the instructions asked by appellant) was erroneous. R. S. 1899, sec. 4340; Glaves v. Wood, 87 Mo. App. 97. (2) This instruction forced the jury to believe respondent's testimony on all other issues, in spite of its contradictions. When there is any substantial testimony on issues, they should be submitted to the jury. Mowry v. Norman, 204 Mo. 191. (3) The instructions asked by appellant should have been given, because they properly presented the law and the issues in the case.

*Frederick J. Chase* for respondent.

(1) Where there is no evidence to sustain an issue, it is the province of the trial court to take that issue from the jury by proper instructions; and where there is very slight evidence, but not sufficient to permit a verdict to stand, the court should take the same action. Bank v. Hainline, 67 Mo. App. 483; Bank v. Bennett, 114 Mo. App. 691; Alexander v. McNally, 112 Mo. App. 563. (2) Where there is no conflict in the evidence on an issue and the credibility of witnesses not involved the issue becomes a question of law to be passed on by the court. Bank v. Bennett, 114 Mo. App. 691. (3) Where defendant introduces in evidence an endorsed note to prove an issue, he must prove the endorsement. Bank v. Pennington, 42 Mo. App. 355; Mayer v. Old, 51 Mo. App. 214. (4) To constitute an estoppel the party must have been induced to act by reason of the matters and things which he pleads

as an estoppel. Grabill v. Bearden, 62 Mo. App. 459; Konta v. Stock Exchange, 189 Mo. 39; Baker v. McInturff, 49 Mo. App. 509; Blodgett v. Perry, 97 Mo. 273; State ex rel. v. Sitlington, 51 Mo. App. 259. (5) Under section 4340, Revised Statutes 1899, the husband can reduce his wife's personal property to his possession only with her express written assent, and her endorsement of a promissory note is not such assent. Case v. Espenschied, 169 Mo. 215; Moeckel v. Heim, 46 Mo. App. 340; McGuire v. Allen, 108 Mo. 403; Hurt v. Cook, 151 Mo. 416.

BROADDUS, P. J.—The respondent's statement of the case is fair and complete with the exception as to the testimony of defendant. It is as follows:

"This suit was brought for the conversion of a promissory note of the face value of $1,700, secured by a deed of trust on Kansas City real estate, dated March 9, 1902, and made by Zelina Florence Ahern and John E. Ahern in favor of Mary W. McMahon, plaintiff. This note was given to renew a former loan between the same parties, made in the year 1897, to this plaintiff from money received from her father's estate. After the extension of the note in suit in November, 1902, the plaintiff placed it with the deed of trust securing the same, in her trunk with her other valuable papers and kept the trunk securely locked.

"At this time plaintiff was living with her husband, John A. McMahon, and continued to live with him until January, 1904, when they were separated, and in May, 1907, she obtained from him a decree of divorce. Before they separated and shortly prior to November 29, 1903, plaintiff's husband, without her knowledge or consent took the note in suit from the plaintiff's trunk where she kept it under lock and key, and pledged the same to one George F. Winter to secure his individual loan. Plaintiff knew nothing about this transaction

until about Christmas, 1903, while searching for some papers she discovered that the note was gone. She immediately accused her husband of taking the note, and he admitted that he had done so and lost the money he had raised on it in a bucket shop, and threatened plaintiff if she accused him "he would commit suicide and would not go alone." The evidence showed that he had frequently threatened the life of the plaintiff and her daughter, and that plaintiff had lived in terror of the man for many years, and that she was afraid to notify Mr. Winter in what manner the note had been taken from her.

"In about a month after plaintiff discovered the loss of the note she left her husband, and went to the home of her relative in Dundas, Canada, where she remained, except for part of one year when she was in Hartford, Conn., until the early part of 1907, at which time plaintiff came to Kansas City and instituted her suit for divorce and this suit for conversion.

"On April 28, 1904, while plaintiff was in Canada, the defendant, James B. Welsh, who was in the real estate, loan and insurance business in Kansas City, made a loan to plaintiff's husband, John A. McMahon, of $1,500 and took as collateral security the note in suit which was brought to him by Mr. McMahon. At that time there appeared to be on the back of the note certain interest credits and words "pay to Jno. A. McMahon or order, Mary W. McMahon, pay to Geo. F. Winter or order, Jno. A. McMahon. Without recourse Geo. F. Winter."

"On May 28th, one month after defendant received the note, the makers thereof paid with the consent of plaintiff, the interest on the note in suit of $51 to Crutcher & Welsh, the defendant's agents, and continued to pay to the defendant or his agents the interest on the note in suit up to May 27, 1906.

"On October 27, 1904, the defendant let McMahon

have $200 more on his note and retained the note in suit as collateral security for $1,700. Before loaning this money the defendant, although well acquainted with the plaintiff and her husband, and well knowing that they were husband and wife, never communicated with her about the matter, nor did he go to see the makers of the note or Mr. Winter, who had previously held the same, but took the security because he thought it a safe loan on good property, and worth its face value. The defendant testified that he had never seen any of the letters prior to the time he paid out the last money which he loaned to plaintiff's husband; and that he knew nothing of plaintiff's claim until something like a year after he made the loan to plaintiff's husband.

"The plaintiff's evidence was that her signature was a forgery, though very like hers; that it was not on the note when she put her papers in her trunk, which she kept securely locked; that the words "Pay to Jno. A. McMahon or order" was plainly in the handwriting of her husband as were the words "Pay to Geo. F. Winter or order;" that she never gave her husband consent to have the note or take it and that she was "Mortally afraid of her husband."

"On March 1, 1907, the plaintiff, through her agent and attorney, demanded of the defendant the return of her note, and upon his refusing to do so brought this suit for conversion. The defense was that the note was duly endorsed and delivered to the defendant as collateral security for John A. McMahon's note; that for more than ten years plaintiff had permitted her husband to deal with the note as his own; that plaintiff had directed the makers to pay interest to defendant's agents and was thereby estopped to claim ownership in the note.

"A trial on these issues was had in the circuit court, the cause submitted to a jury and a verdict returned for $1,776.50, from which this appeal is taken."

At the close of the testimony the court of its own motion gave the following instruction:

"The jury are instructed that if they shall find, from the greater weight of the evidence with respect to its credibility, that the plaintiff herein made a loan to Zelina F. Ahern and John E. Ahern of $1,700 of her own money, and that the note sued for and introduced in evidence was given for said loan, and that the defendant was, on the first day of March, 1907, in possession of the same, and that his only claim of right of possession thereto was to hold the same as collateral security for the note of John A. McMahon, and that defendant, on said first day of March, 1907, refused to deliver the same up to the said plaintiff, then they must find for the plaintiff against the defendant for the value of said note, on the first day of March, 1907, and that to said value they may add interest on such value from said first day of March, 1907, at six per cent per annum; but their finding for the plaintiff, if they shall find for the plaintiff shall not exceed the sum of $1,700, with interest thereon from the first day of March, 1907, at six per cent per annum.

"The jury are further instructed that the written endorsement on the back of the note of Ahern, signed by Mary McMahon, is not a defense to this suit, and cannot be relied upon by defendant to defeat the plaintiff's right."

For all practical purposes the instruction was a direction to return a verdict for the plaintiff leaving to the jury to fix the amount. The instruction is predicated upon the decision of this court in Hurt v. Cook, which was certified to the Supreme Court, and is reported in 151 Mo. 416, and other cases to the same effect. The holding in those cases is to the effect, that, a blank endorsement on a note payable to the wife is not such an express consent of the wife as to authorize the husband to dispose of the same to his own use, as

required by section 4340, Revised Statutes 1899.

The instruction of the court assumes that the wife made the indorsement in blank. The other assumed facts are not denied or admitted by the parties. If the assumption of the court, that the indorsement of the wife was a blank indorsement, and the words "pay to Jno. A. McMahon or order" were not written by or authorized by plaintiff, was not justified under the evidence in the case, defendant claims the giving of the instruction was error. It was held by the St. Louis Court of Appeals, that a similar indorsement evidenced the purpose and intention of the wife to give full possession and dominion over the notes to her husband, and filled the requirements of the statute. To this opinion we cannot accede. The words "pay to Jno. A. McMahon or order," was a limited indorsement, whereas an indorsement in blank is without any restrictions whatever. There is as good or better reason for holding the limited indorsement would give to the husband less control or dominion over a note than if it were in blank. It seems to us that the former should be construed as mere authority from the wife to the husband to collect as her agent. At least such seems to be a reasonable construction. And such being the case, it was not such an assent in writing given to the husband to dispose of the note to his own use and benefit. However, we do not base our decision on such view of the case. But as we view the case there was no evidence that the indorsement was in the handwriting of the wife or that she authorized it. The mere indorsement on the note was not sufficient evidence that she made it. [Bank v. Pennington, 42 Mo. App. 355; Mayer v. Old, 51 Mo. App. 214.] The plaintiff's uncontradicted evidence was that she did not make or authorize the indorsement. This was sufficient to authorize the court to assume the fact as proven. [Bank v. Hainline, 67 Mo. App. 483; Bank

v. Bennett, 114 Mo. App. 691; Alexander v. McNally, 112 Mo. App. 563.]

The defendant pleads an estoppel in that plaintiff by her conduct permitted her husband to deal with said note as if it was his own, thereby obtaining a fictitious credit, whereby the City Lot Company, the assignor of defendant, and defendant were induced to accept the note as collateral security and to advance the said sum of $1,700. But it does not appear that plaintiff had any knowledge whatever at the time her husband pledged the note as collateral security to Winter that he had it in his possession, but that she first discovered that it was gone from her possession, and that her husband had taken it, was in December, 1903. As to the assignor Winter there was nothing shown in the way of an estoppel, as plaintiff at that time had said and done nothing that was calculated to induce him to believe that she was permitting her husband to deal with the note as his own.

While plaintiff was in Canada on April 28, 1904, the defendant received the note from Winter at which time there was certain interest credits endorsed on the back and the words "pay to Jno. A. McMahon or order, Mary McMahon; pay to Geo. F. Winter or order, Jno. A. McMahon. Without recourse Geo. F. Winter." It was not shown that defendant took the note other than on the faith of the indorsements on its back. It is true that thereafter the makers of the note with plaintiff's consent paid to defendant's agents interest thereon to the amount of $57.00. The defendant did not testify to any fact that would go to sustain the plea. On the contrary he stated substantially, that he received the note on the credit of the indorsements, alone. There was no error therefore in the refusal of the court to instruct the jury on that question as requested by defendant.

Affirmed. All concur.