AUGUSTA JOERDEN, RESPONDENT, v. CLARENCE STUMPE, EXECUTOR OF THE ESTATE OF JOSEPH G. JOERDEN, DECEASED, APPELLANT.— 106 S. W. (2d) 543.

St. Louis Court of Appeals. Opinion filed June 29, 1937.

*Leo A. Politte* for appellant.

*Randolph H. Schaper* and *Jesse H. Schaper* for respondent.

McCULLEN, J.—Appellant, defendant below, has appealed from a judgment of the Circuit Court of Franklin County allowing a demand in favor of respondent, plaintiff below, against the estate of Joseph G. Joerden, deceased. The cause was tried by said circuit court on appeal from the probate court of said county, a jury

having been waived. The demand was for moneys received by said Joseph G. Joerden from Augusta Joerden, plaintiff herein, between the years 1910 and 1924 during their marriage. The sum demanded was $1352.22 as the separate estate and property of plaintiff which had been reduced to the possession and use of Joseph G. Joerden during said marriage without the authority and consent in writing of plaintiff. The defendant, as executor of the estate of Joseph G. Joerden, filed an answer denying each and every allegation contained in plaintiff's demand, and for further answer alleged that each and all of the items in plaintiff's demand were fully barred by the Statute of Limitations.

Defendant's theory of the case is that the Statute of Limitations is a bar to plaintiff's recovery, and further that the moneys in question were a gift from plaintiff to her deceased husband.

Plaintiff introduced evidence to the effect that the items of money claimed by plaintiff had been given to her on the dates and under the circumstances stated in her demand, as follows: Between the years 1910 and 1912 there was given to plaintiff by her mother, Maria Maushund, in the distribution of the personal estate of Maria Maushund during her lifetime, the sum of $400. In the year 1924 plaintiff received from her sister, Mrs. Julia Klinge, the sum of $250, being the amount charged against the real estate of Maria Maushund by her last will and testament and devised to said Julia Klinge in favor of plaintiff. Between April 4, 1917, and March 27, 1918, plaintiff received from E. F. Rippstein, executor of the estate of Edward G. Maushund, deceased brother of plaintiff, the sum of $702.22, which was paid to plaintiff as one of the residuary legatees of said deceased brother.

The evidence discloses that plaintiff and Joseph G. Joerden were married in 1903 and lived together as husband and wife in the city of St. Louis until March, 1931. Mr. Joerden at that time left plaintiff in St. Louis and went to Washington, Franklin County, Missouri, and thereafter lived at his mother's home in that county until the time of his death. It was admitted at the trial, by agreement between counsel for the parties, that the last will and testament of Joseph G. Joerden was admitted to probate in the probate court of Franklin County, Missouri, and that Augusta Joerden, the widow, plaintiff herein, was not named in the will; but that plaintiff has received the sum of $400 as personal dower and allowance in lieu of provisions out of Joerden's estate.

Plaintiff's evidence further shows that Joseph G. Joerden did not have any money at the time of his marriage to plaintiff and did not accumulate any money of his own during the marriage. In the summer months during the period of their marriage, Joerden was engaged in the painting business in the city of St. Louis and plaintiff, as his wife, kept boarders and roomers and also did wash-

ing to contribute to their support. Mr. Joerden did all the banking business, the evidence showing that plaintiff never went to the bank and did not at any time withdraw any money.

It appears that the moneys received by plaintiff from her relatives were kept, after 1923, in a joint account of Joseph G. Joerden and Augusta Joerden in the South Side National Bank in St. Louis. In February, 1929, Joseph G. Joerden withdrew the money in the joint bank account and made a time deposit in his own name in the Bank of Washington, Washington, Missouri, in the sum of $1500. That deposit was made on February 5, 1929. On the same date he made an additional deposit in the Bank of Washington in the sum of $500 in his own name. The last mentioned deposit was withdrawn February 18, 1929. The $1500 deposit of February 5, 1929, was withdrawn from the Bank of Washington about August 10, 1932, and at the time of his death Joseph G. Joerden had in a savings account in his own name in the Boatman's National Bank in St. Louis a total sum of $2240. On August 8, 1932, a time certificate for $1689.05, issued by the Bank of Washington to Joseph G. Joerden, which was a renewal of the first certificate issued in February, 1929, and included interest thereon, was cashed at the Boatman's National Bank in St. Louis and on that date a savings account was opened in that bank in the name of Joseph G. Joerden. The savings account remained in that bank until Joerden's death and amounted to $2240 as heretofore stated. This was the only bank account or deposit found by the defendant executor.

The evidence shows that although plaintiff and her deceased husband had some arguments over money matters, they were friendly to each other. Plaintiff's principal witness was her sister, Mrs. Julia Klinge, who lived with plaintiff and plaintiff's husband in their home from 1923 to 1931, when the Joerdens separated. They did not live together as husband and wife after that separation.

The only testimony in the case with respect to the transactions between plaintiff and Mr. Joerden was that given by Mrs. Klinge, plaintiff's sister. She testified that on one occasion, when speaking of plaintiff and himself with respect to money transactions, Joerden told her: "Our money is in the South Side National Bank in St. Louis. What is mine is hers. And I wouldn't live with a woman if she wouldn't give me her money." Mrs. Klinge testified that her sister, plaintiff, always tried to keep peace because Mr. Joerden had an ungovernable temper; that Mr. Joerden paid the bills and the living expenses of the household; that when he worked he sometimes made $45, $35, $32 and maybe $52 in two weeks or longer; that the witness paid board amounting to $7 a week to Mr. Joerden and that he wouldn't allow her to pay the money to plaintiff. It also appears from Mrs. Klinge's testimony that Mr. Joerden suffered from epilepsy from childhood on. The witness was asked on re-cross-

examination: "Well, Mrs. Klinge, did your sister give this money to Mr. Joerden?" and answered: "Certainly, they had it in the bank."

The evidence further shows that at the time Mr. Joerden left plaintiff in St. Louis plaintiff did not have any money and was supported by her sister, Mrs. Julia Klinge, with whom plaintiff then lived; that plaintiff never used any of her money which was deposited by her husband in the banks mentioned and that no paper writing between plaintiff and her husband relating to money matters was ever seen or heard of.

Plaintiff offered to testify as a witness, but on objections made by defendant the court ruled that she should not be permitted to do so because the other party to the cause of action was dead.

Defendant offered no testimony whatsoever, but at the close of plaintiff's evidence offered a demurrer to the evidence in the form of a declaration that under the law and the evidence the judgment should be for defendant, which the court overruled.

Defendant contends that plaintiff's demand having been filed on October 25, 1935, showed that a period of from eleven to twenty-five years had elapsed between the date that plaintiff's cause of action accrued and the date that action was commenced; that the Statute of Limitations having been pleaded in the answer and a demurrer at the close of the evidence having been offered by defendant, the demurrer should have been sustained because by the pleadings the Statute of Limitations was an issue in the case and the evidence adduced by plaintiff conclusively established that the statute was a bar to the action.

Defendant's contention is based upon Section 862, Revised Statutes of Missouri 1929 (Mo. St. Ann., Section 862, p. 1143) which is the five year Statute of Limitations. We are unable to agree with defendant's views on this point. Section 868, Revised Statutes of Missouri, 1929 (Mo. St. Ann., Section 868, p. 1156) before it was repealed in 1933 provided, among other things, that if any person entitled to bring an action at the time the cause of action accrued be a married woman, such person should be at liberty to bring such action, within the respective times limited in the article providing for limitations in personal actions, after the removal of such disability. In 1933 the Legislature repealed Section 868, *supra,* and enacted in lieu thereof a new section relating to the same subject-matter, to be known as Section 868, in which no mention is made of a married woman. [See Laws of Missouri, 1933, p. 190.] There is another statute, however, Section 660, Revised Statutes of Missouri 1929 (Mo. St. Ann., Section 660, p. 4912) which provides that:

"The repeal of any statutory provision shall not affect any act done or right accrued or established in any proceedings, suit or prosecution, had or commenced in any civil case previous to the time when

such repeal shall take effect; but every such act, right and proceeding shall remain as valid and effectual as if the provisions so repealed had remained in force."

It has been held that the statute, Section 660, *supra*, is a declaratory general statute and as such is usually accorded, especially in proceedings involving vested rights, the same effect as a saving clause in the repealing statute. [State ex rel. McKittrick, Atty. Gen., v. Bair, 333 Mo. 1, 16, 63 S. W. (2d) 64, 67.]

Plaintiff having been a married woman "previous to the time" when the repeal of the old statute, Section 868, *supra*, took effect in 1933, her right to a period of five years after her husband's death to bring her demand was an "accrued right" before and at the time of such repeal. Under the provisions of Section 660, *supra*, plaintiff therefore continued to occupy the same status that a married woman occupied prior to the repeal of the old statute, Section 868, and by virtue of Section 660, *supra*, the five year Statute of Limitations was prevented from beginning to run against her until her *status* as a married woman was terminated by the death of her husband.

The date of the death of plaintiff's husband is not shown in the abstract of the record herein, but it is clear from the evidence that plaintiff brought her demand against his estate well within five years after his death and it was, therefore, not barred by the Statute of Limitations.

Defendant further contends that the judgment should have been for defendant for the reason that the money sued for was a parol gift *inter vivos* from plaintiff to her husband and that such gifts from wife to husband are recognized by the laws of this State. Defendant cites the case of Parker v. Staley, 21 S. W. (2d) 200, in support of such contention. There is no doubt that case does hold that under Section 7323, Revised Statutes of Missouri 1919, now Section 2998, Revised Statutes of Missouri 1929 (Mo. St. Ann., Section 2998, p. 5055), providing that a married woman shall be deemed a *femme sole* so far as to enable her to transact business, make contracts, sue and be sued, a wife has power to make a parol gift *inter vivos* to her husband notwithstanding Section 7328, Revised Statutes of Missouri 1919, now Section 3003, Revised Statutes 1929 (Mo. St. Ann., Section 3003, p. 5064) which provides that the property of a wife shall remain her separate property unless full authority is given to the husband, in writing, to sell or encumber it for his own use and benefit.

However, there was direct and positive evidence of a gift in the Parker case, *supra*, while in the case at bar defendant offered no evidence whatsoever and there is nothing in plaintiff's evidence to show that plaintiff did make a gift of her moneys to her husband. It is not even claimed that plaintiff signed any writing giving her

husband authority over her moneys and there is no evidence from which it could be reasonably inferred that plaintiff delivered them to her husband with an intention on her part to give them to him and release all her claims thereto. On the contrary, giving plaintiff the benefit of all reasonable favorable inferences, as we must in considering defendant's demurrer to the evidence, it appears that plaintiff's husband took possession of her moneys under circumstances which practically precluded plaintiff from offering any resistance. If she wished to keep peace in the family and continue to live with the deceased as his wife, there appears to have been nothing that plaintiff could have done except to yield to his domination as she did. The evidence shows that plaintiff's deceased husband was a man with an ungovernable temper. That evidence was not disputed. The evidence also shows without any dispute that the deceased stated that he would not live with a woman if she wouldn't give him her money.

We do not believe we would be justified in holding that, because plaintiff did not take steps to assert her rights against her husband and risk incurring his wrath, she thereby made him a gift of the moneys which she received from her relatives. A gift would have to be proved by evidence more substantial than the mere unwillingness of a loyal wife to quarrel with her husband, to warrant such a holding as defendant herein contends for. The moneys in question belonged to plaintiff, and defendant, by asserting that plaintiff's moneys were given by plaintiff to her husband, thereby concedes that they were received by plaintiff's deceased husband and that they went into and became a part of his estate.

Defendant also relies on the case of Commonwealth Trust Co. v. Du Montimer, 193 Mo. App. 290, 183 S. W. 1137. We believe that case is not applicable here. In that case a savings bank depositor requested that his account be made a joint account in favor of himself and another. A signature card was sent to the donee who signed it and returned it to the bank and the account was made subject to withdrawal by either or survivor. It was held that there was a gift of a joint interest in the account entitling the donee to the fund on surviving the donor, although the donor had retained the pass book which was required to be presented when an amount was withdrawn. The facts in that case are thus shown to be quite different from the facts in the case at bar. The deceased husband of plaintiff in the case at bar was not the donor of the gift of the moneys involved herein but is claimed to have been the donee thereof, whereas in the Commonwealth Trust Co. case, *supra,* the banking transactions therein were carried on by the donor. In the case at bar there is no evidence to show that plaintiff, who is claimed to have been the donor of the alleged gift, did anything in carrying on the banking transactions involved the money in question. On the contrary, the only

evidence adduced in the case shows that it was plaintiff's husband, now claimed to be a donee, who handled all the banking transactions.

In Broughton v. Brand, 94 Mo. 169, it was held that where a husband had invested in land money which had been received by his wife during coverture as a gift from her father and the husband took the title in his own name with her knowledge and consent, but not in writing as required by the statute, the husband was only a trustee for the benefit of the wife.

The case at bar is similar to the case of Winn v. Riley, 151 Mo. 61, 52 S. W. 27. That was an appeal from a judgment of the Circuit Court of Clinton County allowing a demand in favor of the plaintiff therein, Julia A. Winn, widow of James M. Winn, deceased, against his estate, the case having been taken to the Circuit Court of Clinton County on appeal from the probate court of that county. The demand of plaintiff therein charged that the deceased had received in various amounts and at various times cash which was the separate estate of plaintiff. The evidence showed that the several items of money charged in the demand had been given to plaintiff by her father and that they had come into the hands of her husband and had been used by him in his business. The courts held in that case that the moneys having been appropriated by plaintiff's deceased husband without her consent in writing, she was entitled to recover the amount thereof from his administrator after his death. Referring to the statute, now Section 3003, Revised Statutes of Missouri 1929 (Mo. St. Ann., Sec. 3003, p. 5064) and citing a number of cases, the court held that the husband had no power to appropriate the wife's gifts to his own use without her consent in writing, and went on to say:

"No such consent was shown, or given, and the money which came by these gifts of her father to the plaintiff, was her separate property, was not transferred to her husband by his use thereof, and was a trust fund in his hands for her benefit while in his use and possession." [Winn v. Riley, 151 Mo. 61, 66, 52 S. W. 27.]

In concluding the opinion in the Winn case, *supra,* the Supreme Court said, l. c. 67:

"As to such fund she could treat her husband either as a trustee or simply as a debtor. [Hoffmann v. Hoffmann's Exec., *supra,* Bank v. Winn, *supra*; Alkire Grocer Co. v. Ballenger, *supra.*] By electing to treat him as a debtor, the indebtedness although growing out of this trust relationship, became a money demand against his estate over which the probate court had jurisdiction. [Hoffmann v. Hoffmann's Exec., *supra*; Church v. Church, 73 Mo. 421; Todd v. Terry, 26 Mo. App. 598.] There is no place in this case for the application of any of the statutes of limitation."

Under the evidence in the case at bar and the authorities to which we have referred, we hold that the action of the circuit court in rendering judgment for plaintiff was correct. The judgment is therefore affirmed. *Hostetter, P. J.,* concurs; *Becker, J.,* absent.