# MARCH, 1938.

BERTHA HAX, (PLAINTIFF), APPELLANT, v. THOMAS O'DONNELL, EXECUTOR OF THE ESTATE OF HENRY HAX, DECEASED, (DEFENDANT), RESPONDENT.—117 S. W. (2d) 667.

St. Louis Court of Appeals.   Opinion filed June 7, 1938.

*S. H. Ellison* for appellant.

*James C. Dorian* and *Claude M. Smith* for respondent.

BENNICK, C.—This case arises in connection with the administration of the estate of Henry Hax, deceased, who died in Knox County, Missouri, on December 28, 1931. The particular matter in controversy is the question of whether plaintiff, the surviving widow, is entitled to have certain personal property in the estate set over to her absolutely upon the ground that the same came into her husband's possession with her written assent.

It appears that Mr. and Mrs. Hax were originally residents of the State of Nebraska, and that on August 1, 1916, while they were residing in that State, Mrs. Hax, the plaintiff herein, inherited the sum of $2045 as her individual share of her mother's estate. The money came to her in the form of four checks which she promptly indorsed and handed over to her husband, who then himself indorsed them and cashed them at the bank upon which they were drawn. There was no denial of the fact that the deceased then and there reduced the proceeds of the checks to his own possession, and it is plaintiff's contention that her indorsement of the checks amounted to the giving of her "written assent" thereto. All this occurred, of course, while plaintiff and her husband were residents of Nebraska, a circumstance which is counted upon by the defendant executor as serving, along with other things, to defeat plaintiff's right to have the sum in question now set aside as her absolute property, not subject to the payment of her husband's debts.

Some two years after the deceased had reduced plaintiff's inheritance to his own possession the two of them moved to Missouri and established a residence in Knox county where they were residing at the time of the death of the deceased on Decembr 28, 1931.

The deceased died testate, and thereafter, on January 16, 1932, the defendant herein, who had been nominated as executor in the will, was granted letters testamentary by the Probate Court of Knox County.

In due time there was filed an inventory and appraisement of the estate which disclosed that the deceased had died possessed of personal

property appraised at $10,326.75, and of real estate in Knox county appraised at $1000.

What provisions were made for plaintiff in the will does not appear, but evidently concluding that she could better herself by a renunciation of the will, she duly renounced the same, and caused her written renunciation to be filed in the probate court on October 11, 1932. By such instrument she not only signified her refusal to accept the provisions made for her in the will, but she also announced her election "to take one-half of the estate of my deceased husband, which he owned at his death, together with all other property allowed me under the probate laws of the State of Missouri."

The deceased had died without any child or other descendants in being capable of inheriting, and in view of this circumstance, plaintiff's election was an exercise of the right given the widow by section 327, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 327, p. 215), to have her election to take common-law dower (a third part of her husband's lands to hold and enjoy during her natural life) as provided in section 318, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 318, p. 202), or else to take under the provisions of section 325, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 325, p. 212), which reads as follows:

"When the husband shall die without any child or other descendants in being, capable of inheriting, his widow shall be entitled: First, to all the real and personal estate which came to the husband in right of the marriage, and to all the personal property of the husband which came to his possession with the written assent of the wife, remaining undisposed of, absolutely, not subject to the payment of the husband's debts; second, to one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts."

Subsequently, on January 14, 1933, the instrument thus executed by plaintiff was filed in the office of the Recorder of Deeds for Knox County in compliance with the provision of section 329, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 329, p. 216). This requirement is for the reason that the widow's election as to what dower she shall take affects the title to realty (Brown v. Tucker Estate, 135 Mo. App. 598, 117 S. W. 96), and in this case there is no question but that plaintiff's renunciation of the will and election as to dower were both made in due time and proper form.

On the same day, that is, on January 14, 1933, plaintiff filed in the probate court a further verified instrument in which, after setting up the fact that her husband had received and retained the amount of her inheritance from her mother's estate, she alleged that "said sum is due me from his estate, which I ask be paid me as provided in section 325, probate laws of the State of Missouri, Statutes of 1929." In other words, what plaintiff was relying upon as the basis of her

claim was so much of section 325 as provides that when the husband shall die (as the deceased did) without any child or other descendants in being capable of inheriting, his widow shall be entitled to "all the personal property of the husband which came to his possession with the written assent of the wife, remaining undisposed of, absolutely, not subject to the payment of the husband's debts."

It appears that the probate court, perhaps at the suggestion of the defendant executor or his attorneys, erroneously chose to treat the paper thus filed by plaintiff as an ordinary creditor's demand against the estate, and so denominated and referred to it in whatever record entries were made in connection with it.

One of such record entries discloses that on January 17, 1933, the parties appeared in the probate court for a hearing on plaintiff's claim, and that on that occasion some one of them filed an affidavit to the effect that the probate judge was a material witness in the cause. Upon the filing of such affidavit the probate judge, under section 2053, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 2053, p. 2646), became disqualified to sit in the case, and the same was thereupon certified to the Circuit Court of Knox County for that court to hear and determine the matter in the exercise of the same jurisdiction as the probate court would itself have exercised if the judge had not been disqualified by the filing of the affidavit.

When the case reached the circuit court the defendant executor appeared, and treating the claim as a creditor's demand against the estate, filed his motion to dismiss the same upon the ground, among others, that there had been no exhibition of the demand for allowance as required by section 187, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 187, p. 117). A timely and proper exhibition for allowance is of course jurisdictional in the case of a creditor's demand against an estate in process of administration (Schaefer v. Magel's Estate (Mo. App.), 108 S. W. (2d) 608), and if the claim in question had been a mere demand against the estate as the defendant executor insisted that it was, there is no doubt that for want of an exhibition for allowance the court would have been without jurisdiction to have allowed it.

In due course the motion to dismiss was taken up by the court, and, "after being seen and examined," was sustained, and the clerk ordered to certify the action of the circuit court back to the probate court as required by section 2053 to the end that the disposition of the matter might be made to appear in the records of the probate court in which the administration of the estate was then in progress.

There is a great deal said in the briefs about whether the action of the circuit court in sustaining the motion to dismiss was final and conclusive upon plaintiff's right to further prosecute the proceeding she had instituted to have the personal property in question set over to her absolutely out of her husband's estate. Defendant executor

argues that it was final and *res adjudicata,* while plaintiff insists with equal earnestness to the contrary. Whatever the legal effect of the court's disposition of the motion may actually have been, it would at least appear that the court itself did not regard its decision as a finality, since after plaintiff's subsequent motion to set aside the order of dismissal was overruled, it denied her application to be allowed an appeal therefrom.

At this stage of the case plaintiff seems to have abandoned the proceeding which had been certified to the circuit court, and on May 5, 1934, instituted the suit now before us by filing in the Circuit Court of Knox County her purported bill in equity in which she named the executor of her deceased husband's estate as the party defendant.

In such petition she set up the facts relating to the death of the deceased without any child or other descendants in being capable of inheriting; her renunciation of the will and election to take under section 325; the filing in the probate court of her claim for the amount of her inheritance which her husband had reduced to his possession with what was alleged to have been her written assent; and the refusal of the probate court, at the alleged instance of the defendant executor, to take cognizance of her claim upon the theory that the same was a demand against the estate and had not been exhibited to the executor for allowance within the year.

She further alleged that the value of the estate, after the payment of all debts, was in excess of $4000; that she had unavailingly demanded the amount of her inheritance out of the estate; and that she had no adequate remedy at law.

Her prayer was for a money judgment against defendant executor in the sum of $2000, and that the same be declared a lien on any property of the estate.

The defenses, as presently relied upon, were three in number, the first, that there had been no timely exhibition of plaintiff's demand for allowance; the second, that the order of the circuit court dismissing her claim was *res adjudicata* of her right to maintain this suit; and the third, that inasmuch as the deceased had reduced plaintiff's money to his possession while they both were residents of Nebraska, one of the states that had adopted the common law, and no part of such transaction had occurred in Missouri, said money became the absolute property of the deceased, so that upon his death plaintiff was not entitled to have the same set over to her as her absolute property under the provisions of section 325.

After a trial of the issues the court rendered its judgment and decree in favor of the defendant executor, and against the plaintiff, and the latter's appeal to this court has followed in the usual course.

The chief point at issue on this appeal is necessarily that of whether the lower court was warranted in finding in favor of the defendant

executor and against the plaintiff upon the latter's purported cause of action for equitable relief.

Now the plain and obvious purpose of section 325 is to provide a means whereby the widow, in the event her husband dies without any child or other descendants in being capable of inheriting, may be enabled to receive back to herself absolutely and free from the claims of her husband's creditors, not only the real and personal estate, if any, which came to her husband in right of the marriage, but also whatever remains of any personal property subsequently acquired by her during coverture which came into his possession with her written assent. In such a case the contest over the ultimate distribution of the estate is primarily between the widow and the husband's collateral kindred, and in this circumstance it has been thought far better by the Legislature that the widow should receive back whatever property she brought into the marriage than that any portion of it should go to her husband's collateral kindred, who would have had no part in its accumulation, and whose claims thereto would be infinitely inferior from every point of view to that of the widow herself. [Haniphan v. Long, 70 Mo. App. 351.]

This case of course involves no claim of plaintiff to any real or personal estate which came to her husband in right of the marriage, but has to do only with her claim that she is entitled to have set aside to her absolutely, and not subject to the payment of her husband's debts, certain personal property of her husband which came into his possession during the marriage with her alleged written assent.

Prior to the 1879 revision of the statutes what is now section 325 did not include the provision that the widow should be entitled ''to all the personal property of the husband which came to his possession with the written assent of the wife,'' and such clause first appears in the 1879 revision, having evidently been inserted in the section in the course of the revision which was made at that legislative session. This would indicate that the amendment of what is now section 325 was undoubtedly prompted by the vital change in the law theretofore effected by the enactment of what is now section 3003, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 3003, p. 5064), which statute was first enacted in 1875, and which provides, in effect, that personal property of the wife which the husband purports to reduce to his possession may nevertheless not become his property except with the wife's written assent, expressly conferring upon the husband full authority to sell, encumber, or otherwise dispose of the same for his own use and benefit.

In other words, prior to the first enactment of section 3003, while the rule of the common law was in force, title to personal property acquired by the wife vested in the husband *jure mariti* as soon as he reduced the same to his possession. [Long v. Martin, 152 Mo. 668, 677, 54 S. W. 473.] However, since the enactment of section 3003,

personal property which the wife acquires during coverture remains her own, and even though the husband attempts to reduce the same to his possession by his use, occupancy, care, or protection thereof, he nevertheless acquires no title thereto, but instead is constituted a trustee for his wife, unless he obtains the property with his wife's express written assent that he may have full authority to sell, encumber, or otherwise dispose of the same for his own use and benefit. [Alkire Grocer Co. v. Ballenger, 137 Mo. 369, 375, 38 S. W. 911; McLeod v. Venable, 163 Mo. 536, 541, 63 S. W. 847; Broughton v. Brand, 94 Mo. 169, 7 S. W. 119; Yates v. Richmond Trust Co. (Mo. App.), 220 S. W. 692.]

So it was that in view of the legislative purpose to restore to the wife (where her husband dies without any child 'or other descendants in being capable of inheriting) all that she had brought into the marriage relation, section 325 was amended so as to entitle her to get back whatever might remain of personal property which, originally belonging to her, had become her husband's absolute property by virtue of the giving of her written assent as provided for in section 3003. As we have pointed out, absent her written assent, personal property acquired by her would never have become the property of her husband even though he might have purported to reduce the same to his own possession, and having never been his property, would be no part of his estate to be administered upon unless the widow should elect to waive the trust which otherwise existed and seek to recover the same as an ordinary creditor by a demand against the estate. [Winn v. Riley, 151 Mo. 61, 52 S. W. 27; Abernathy v. Hampe (Mo. App.), 53 S. W. (2d) 1090; Joerden v. Stumpe (Mo. App.), 106 S. W. (2d) 543.]

With this preliminary understanding of what section 325 undertakes to accomplish, we come at once to the questions, not only of plaintiff's right to have the amount of her inheritance set over to her out of the estate, but also of the propriety of the remedy she has chosen to obtain the relief she asks, that is, by a suit in equity invoking the general equitable jurisdiction of the circuit court.

The Constitution (art. 6, sec. 34) confers jurisdiction upon the probate court "over all matters pertaining to probate business," while as to the circuit court it provides (art. 6, sec. 22) that such court shall have "exclusive original jurisdiction in all civil cases not otherwise provided for," and such "concurrent jurisdiction with . . . inferior tribunals . . . as is or may be provided by law."

Section 2046, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 2046, p. 2641) literally follows the language of article 6, section 34, of the Constitution in prescribing the jurisdiction of the probate court, while section 1938, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 1938, p. 2605), provides that the circuit court shall have "exclusive original jurisdiction in all civil cases which shall

not be cognizable before . . . probate courts . . . and not otherwise provided for by law,'' and ''appellate jurisdiction from the judgments and orders of . . . probate courts.''

Thus it is to be observed that full and complete jurisdiction has been designedly conferred upon the probate court to afford a complete and final administration of estates of deceased persons, with the necessary consequence that the former chancery jurisdiction in such matters has been supplanted and excluded by the administration code save in those instances where some situation is presented which renders the case one where adequate relief cannot be had at law. Consequently the circuit court may exercise no original jurisdiction over matters pertaining to probate business unless the relief to be had is such that the probate court may not afford it; and where a party interested in the administration of an estate seeks to invoke the jurisdiction of a court of equity in the assertion of his claim or the adjudication of his interest, he must obviously show that the matter is one of pure equitable cognizance, so that the probate court, in the exercise of its limited jurisdiction, is powerless to afford the requisite relief. [Scott v. Royston, 223 Mo. 568, 585, 123 S. W. 454; State ex rel. v. Bruce, 334 Mo. 1107, 1115, 70 S. W. (2d) 854, 857; Matson & May v. Pearson, 121 Mo. App. 120, 97 S. W. 983; State ex rel. v. Lamm (Mo. App.), 216 S. W. 332, 333.]

Now section 325, insofar as we are concerned with its provisions in the case at bar, provides for the making by the widow of a claim to definite personal property in the estate. Such personal property must be included in the estate, and the husband must have been the owner of the same, else section 325 could have no application, and the probate court would be wholly without jurisdiction. But such a claim by a widow is not a demand against the estate, since a demand contemplates the relation of debtor and creditor, and the creditor who secures the allowance of his demand merely shares ratably with other creditors of the same class. Under this section the widow takes, not as a creditor, but by virtue of her rights and status as the widow, and if she recovers the personal property which came to her husband from her with her written assent, she recovers it, not because he owed it to her, but because the Legislature has provided that she shall have it back when the husband dies without any child or other descendants in being capable of inheriting.

Upon the filing of a claim based upon this particular provision of section 325, the probate court must therefore find that the husband died without any child or other descendants in being capable of inheriting; that the personal property claimed by the widow had come into the husband's possession from his wife with her written assent as provided for by section 3003; and that the same had not been disposed of, but was still included in the estate. Having so found, the probate court should merely order that such personal

property be set aside to the widow absolutely and free from the claims of her husband's creditors, and if the particular case presents no question of pure equitable cognizance, then the probate court alone has the original jurisdiction to adjudicate the widow's claim. [Woerther v. Miller, 13 Mo. App. 567, 571.]

We are aware that there are statutes which confer jurisdiction upon the circuit court in cases involving the admeasurement of dower (that is, the interest the widow takes as doweress in her husband's real estate), but when she claims as does the plaintiff in the case at bar, her claim is for personal property, and the statutes providing for the admeasurement of dower in lands in the circuit court do not apply to the adjudication of the widow's interest in the personalty. [Howard v. Strode, 224 Mo. 210, 220, 221, 146 S. W. 792.]

In the case at bar, which is purely a proceeding to determine a widow's rights under section 325, there is no matter of equitable cognizance involved, and no fact has been pleaded and no reason shown why plaintiff might not have her claim adjudicated in the ordinary course of law in the probate court. She pleads, as the evidence shows, that the circuit court (to which her claim had been certified, and which was exercising probate jurisdiction in the adjudication of it) refused to take cognizance thereof upon the erroneous theory that the same was a demand against the estate which required an exhibition to the executor for allowance, but upon the court's dismissal of her claim her remedy was by an appeal to this court or by an appropriate proceeding to have her appeal allowed, and not by the abandonment of that proceeding and the institution of an original proceeding in the circuit court. Whatever the merits of her claim might be (to which question we shall presently advert), it was to be enforced by a suit in equity, and so for this reason, regardless of any other feature of the case, the lower court would have been not only warranted in finding against her, but in fact required to deny her the relief she asked.

But aside from any question of lack of equitable jurisdiction, it would appear that plaintiff would not in any event have been entitled to prevail upon the merits.

The written assent she counts upon was her blank indorsement of the checks she received upon the settlement of her mother's estate, and if the statutory law of Missouri is to control, it has been repeatedly held that the wife's blank indorsement of a check or promissory note over to her husband does not constitute the giving of written assent within the meaning of section 3003. We appreciate that such blank indorsement protects the bank or maker of the note in making payment to the husband as indorsee, but although this is true, it does not necessarily follow that the indorsement discloses the precise nature of the transaction between the wife and her husband. The wife's indorsement is none the less required even though the only purpose is to transfer the check or not to the husband to collect as his wife's

agent or to hold the proceeds as trustee for her, and it consequently falls far short of amounting to express written assent that the husband may take absolute title to the money and hold and dispose of the same for his own use and benefit. [McGuire v. Allen, 108 Mo. 403, 18 S. W. 282; Hurt v. Cook, 151 Mo. 416, 52 S. W. 396; Case v. Espenschied, 169 Mo. 215, 69 S. W. 276; McMahon v. Welsh, 132 Mo. App. 593, 112 S. W. 43.]

The difficulty in this case arises from the fact that the transaction between plaintiff and her husband occurred while they were both residents of Nebraska, so that under defendant's theory of the case, the rule of common law should govern in determining the relative rights of the parties. Upon this basis section 3003 would have no extraterritorial effect; the question of written assent would be quite immaterial; and the absolute title to the money which the deceased would have acquired at that time would not have been affected by the subsequent removal of the parties to Missouri. To the contrary, the situation now existent would be no different than if he had acquired the money from some third person, and upon his decease plaintiff could not claim the benefit of section 325 by way of recovery of the money, regardless of any question of the character of her assent. [Meyer v. McCabe, 73 Mo. 236; Benne v. Schenecko, 100 Mo. 250, 13 S. W. 82; Phipps v. Martin (Mo. App.), 227 S. W. 870.]

It has been held, however, that we cannot presume that the common law was in force in Nebraska so as to have determined the effect of the transaction in question (Lillard v. Lierley, 200 Mo. App. 140, 202 S. W. 1057), and upon that basis the Missouri law must be applied as we have already stated it to be.

So in any event plaintiff is not entitled to have the allowance she asks out of her husband's estate as personalty which should be restored to her as the widow, and for the reasons stated, no error appearing in connection with any of the points assigned by plaintiff, it follows that the judgment rendered by the circuit court should be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.